739 A.2d 353 (1999)
In re C.L.D., Jr., Appellant.
No. 97-FS-1166.
District of Columbia Court of Appeals.
Argued November 20, 1998.
Decided October 28, 1999.
*354 Paul Holland, appointed by this court, for appellant.
Sidney R. Bixler, Assistant Corporation Counsel, with whom Jo Ann Robinson, Principal Deputy Corporation Counsel, Robert R. Rigsby, Deputy Corporation Counsel, and Rosalyn Calbert Groce, Director, Policy and Appeals Branch, were on the brief, for the District of Columbia.
Before WAGNER, Chief Judge, RUIZ, Associate Judge, and PRYOR, Senior Judge.
PER CURIAM:
A petition was filed against appellant, C.L.D., in the Superior Court, Family Division, Juvenile Branch, alleging assault on a police officer in violation of D.C.Code § 22-505(a) (1995 Repl.). He was found guilty of the offense at the conclusion of a factfinding hearing. This case raises a question of statutory interpretation. That question is whether an individual's verbal challenge to a police officer's order, and attempt to walk away from the officer, falls within the prohibition of the statute. We hold, in the circumstances presented, that appellant did not violate the provisions of the statute. Accordingly, we reverse the adjudication of guilt rendered by the trial court.

I.
At about 9:30 a.m. on February 5, 1997, a school day, appellant and two other young men were walking in the 3900 block of Yuma Street, Northwest, in the District of Columbia. The three young men were approximately a block away from a local high school. Officer Melvin Evans, in uniform, approached them and inquired if they were students at the school. Upon receiving an affirmative answer, and knowing that starting time at the school was 8:45 a.m., the officer directed the students to stand by the police car and to produce identification. The students replied they had none. The officer then sought information from them orally. Appellant refused to identify himself and began to use profanity. When he stated his intention to leave, the officer directed him to remain. After more profanity, appellant started to walk away. The officer forcibly restrained him and placed him in custody.[1]

II.
Early common law decisions produced a trilogy of rules regarding the arrest of a citizen by a police officer. Though related, these rules address separate concerns. It is a long-standing premise that a law enforcement officer is authorized to use reasonable force necessary to effect the arrest or detention of a citizen. UNDERSTANDING CRIMINAL LAW, DRESSLER, *355 Sec. 21.03 (2d ed.1995); CRIMINAL LAW, ROBINSON, Sec. 8.3 (1996); Durham v. State, 199 Ind. 567, 159 N.E. 145 (1927). Earlier precedents allowed a citizen to use reasonable force to resist what the citizen believed, in good faith, to be an unlawful apprehension. UNDERSTANDING CRIMINAL LAW, at Sec. 18.06(D). Lastly, an officer was authorized to use measured force, depending upon the gravity of the offense, against a fleeing suspect. See id. With the increase of urban communities, the use of force in the latter two circumstances became more restricted, and significant changes evolved. Many jurisdictions have enacted statutes providing that an arrestee may not resist apprehension even if it is believed that the arrest or detention is unlawful. Id. Similarly, the magnitude of force, and the manner of pursuit, used by a police officer to catch a fleeing suspect, has caused increasing scrutiny and restraint, see, e.g., Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). As the Supreme Court observed in Terry v. Ohio, 392 U.S. 1, 13, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), ". . . Street encounters between citizens and police officers . . . range from wholly friendly exchanges of pleasantries or mutually useful information to hostile confrontations [between] armed men. . . ." Thus courts are continuously concerned with balancing legitimate law enforcement powers and the rights of individual citizens.
D.C.Code section 22-505(a), provides, in part:
Whoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with any officer or member of any police force operating in the District of Columbia
while engaged in or on account of the performance of his or her official duties. . . . It is neither justifiable nor excusable cause for a person to use force to resist an arrest when such an arrest is made by an individual he or she has reason to believe is a law enforcement officer, whether or not such arrest is lawful.
This statute, broadly drawn, stems from, and is related to, the common law rule permitting a police officer to effectuate an arrest or detention by reasonable force, if necessary. It plainly seeks to deescalate the potential for violence which exists whenever a police officer encounters an individual in the line of duty.
It is important to bear in mind that the issue before us is not whether the police officer had reason to act as he did. Although the justification for the police officer's conduct is relevant to the statutory requirement that the incident have taken place "while [the officer] engaged in or on account of the performance of his or her official duties," D.C.Code § 22-505(a) (1990), that element of the offense is not contested.[2] The question before us is whether C.L.D.'s conduct violated the statute.

*356 III.
The precise issue presented in this appeal is one we have not addressed. Previously, we have held that a person who physically challenges police officers by striking them violates the statute by "opposing" a police officer. See In re E.D.P., 573 A.2d 1307, 1309 (D.C.1990). Although it has been said that the statute encompasses "nonviolent obstruction of a police officer in the performance of his duty," Jones v. United States, 128 U.S.App. D.C. 36, 38 n. 2, 385 F.2d 296, 298 n. 2 (1967),[3] we have held that a person who simply speaks out to a police officer, without more, does not violate the statute. See In re E.D.P., supra, 573 A.2d at 1309. This case presents a situation in between those we have considered, involving verbal conduct and evasive action by the accused, but not a physical assault.
In evaluating whether the conduct at issue in this case constitutes an offense under the statute, we turn, first, to consider the terms at issue in their statutory context. See Edwards v. United States, 583 A.2d 661, 664 (D.C.1990). The statutory offense of assault on a police officer is framed in terms of "assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], or interfer[ing]" with a police officer in the performance of the officer's official duties. D.C.Code § 22-505(a).[4] We have not described the scope of conduct encompassed by those words, but have stated in construing the statute's prohibition on "oppos[ing]" a police officer, that where speech is involved, the statute should be "narrowly construed" to avoid undue infringement of First Amendment rights. See E.D.P., supra, 573 A.2d at 1309 (citing City of Houston v. Hill, 482 U.S. 451, 463 n. 11, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987)). Cf. R.A.V. v. St. Paul, 505 U.S. 377, 389-90, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) (striking down ordinance against "fighting words" that prohibited otherwise permitted speech solely on basis of content). We are also mindful that in the context of the Fourth Amendment, a person is not obligated to comply with a police request to stop and answer questions. Accordingly, a person may avoid meeting the police without thereby triggering the sort of suspicion that justifies further police investigation. See Brown v. United States, 590 A.2d 1008, 1019 (D.C.1991) (citing In re D.J., 532 A.2d 138, 141 (D.C.1982)). In light of the commonly-understood meaning of the statutory terms and guidance concerning possible constitutional implications, and bearing also in mind that the imprecision of the statutory terms calls for application of the rule of lenity, see Riggs Nat'l Bank v. District of Columbia, 581 A.2d 1229, 1262 *357 (D.C.1990),[5] we hold that to constitute an offense under D.C.Code § 22-505, a person's conduct must go beyond speech[6] and mere passive resistance or avoidance, and cross the line into active confrontation, obstruction or other action directed against an officer's performance in the line of duty.[7]See Ransom v. United States, 630 A.2d 170 (D.C.1993) (finding evidence sufficient to establish appellant "resisted" arrest where, during flight, he pulled gun from waistband and turned to police officers with gun in hand). The key is the active and oppositional nature of the conduct for the purpose of thwarting a police officer in his or her duties.[8]
Although we recognize that this interpretation is somewhat imprecise, it is no different than in any number of situations where a careful balance must be struck between a statutory purpose and constitutional concerns. The requisite balancing must be conducted, on a case-by-case basis, in an intensely factual analysis. We strike the balance in this case by concluding that C.L.D.'s conduct, as found by the trial court, did not cross the line we have identified. At most, C.L.D. can be said to have been obnoxiouslyperhaps even offensively uncooperative. No doubt he frustrated the officer's purpose; but the manner in which he did so does not contravene the statute because what C.L.D. did was to ignore the police officer's command, mouth off, and walk away. He did not resist, oppose or impede[9] the officer by *358 actively interposing some obstacle that precluded the officer from questioning him or attempting to arrest him. Rather, he chose not to comply. We conclude that the statutory language does not evince a legislative intent to punish such noncompliance as a felony, with a penalty of up to five years. See D.C.Code § 22-505(a).
Accordingly, the judgment of the trial court is hereby
Reversed.
NOTES
[1] After a remand of the record for additional findings, the trial judge limited his factual findings to those which we have stated.
[2] Thus, we need not address the allegations made by C.L.D., and apparently at least somewhat credited by the trial court, that the police officer used excessive force in arresting C.L.D. after he refused to comply with the officer's order. The statute expressly makes the lawfulness of police conduct irrelevant as a defense to the "use [of] force to resist an arrest." D.C.Code § 22-505(a) ("It is neither justifiable nor excusable cause for a person to use force to resist an arrest when such arrest is made by an individual he or she has reason to believe is a law enforcement officer, whether or not such arrest is lawful.") (emphasis added). Although in this case, the trial court found C.L.D. guilty of "resist[ing]" under the statute, it also found that the officer told C.L.D. that "he `was giving him a lawful order and that he could be placed under arrest if he would not comply.'" (Emphasis added.) The government does not contend, and the trial court did not find, that the police officer was attempting to arrest C.L.D. Therefore, as there was no arrest in this case during the time of C.L.D.'s conduct at issue, we have no reason to consider the statutory provision that the unlawfulness of the officer's action is irrelevant to defense of "use [of] force to resist an arrest."
[3] The issue was raised tangentially in Jones, where appellant was not charged with violating the statute, but because the appellant, who had been convicted of manslaughter, had sought to prove his claim of self-defense by introducing evidence that the decedent had been convicted under the statute. The trial court excluded the evidence. On appeal, the court affirmed, noting, without citation or analysis of the statutory language, that the statute prohibited not only physical interference, but also "nonviolent obstruction." Jones, supra, 128 U.S.App. D.C. at 38 n. 2, 385 F.2d at 298.
[4] The more common dictionary meanings of these terms are as follows:

To "assault" is to "rush violently and hostilely against.. to attack (a person) typically with brutal violence . . . to commit rape upon . . . to attack violently by nonphysical means."
To "resist" is to "withstand the force or the effect of . . . to exert oneself to counteract or defeat . . . to be distasteful to."
To "oppose" is to "to place over against something so as to provide resistance, counterbalance or contrast . . . to offer resistance to, contend against, or forcefully block."
To "impede" is to "make timid or fearful: inspire or affect with fear: frighten . . . to compel to action or inaction."
To "interfere" is "to come in collision: to be in opposition: to run at cross-purposes: clash . . . to enter into or take a part in the concerns of others: intermeddle: interpose: intervene."
Webster's Third New International Dictionary (1971).
[5] Although the arguable ambiguity of the statutory terms would permit it, a review of the legislative history yields little of interest on the issue before us.
[6] There is, of course, a distinction between protected speech and criminal threats, which could form the basis of an offense under § 22-505.
[7] We do not mean to imply that a person's speech may not be used to establish the offense, but that speech, alone, may not permissibly constitute the offense. See Wisconsin v. Mitchell, 508 U.S. 476, 489, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993) ("The First Amendment. . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent.").
[8] The terms used in statutes of other jurisdictions more aptly cover the conduct in this case. Cf. DEL.CODE ANN. tit. 11 § 1257 (1998) (making it illegal to "prevent[ ] or attempt[ ] to prevent a peace officer from effecting an arrest or detention"); MO. ANN. STAT. § 575.150 (Vernon 1998 Supp.) (making it illegal to "resist" or "interfere" with an officer making an arrest or detention); N.D. CENT.CODE § 12.1-08-01 (1999) (making it a misdemeanor to "intentionally obstruct[ ], impair[ ], impede[ ], hinder[ ], prevent[ ], or pervert[ ] the administration of law or other governmental function"); INDIANA CODE ANN. § 35-44-3-3 (Michie 1999) (making it illegal to "forcibly resist[], obstruct[ ], or interfer[ ] with" a law enforcement officer performing his duties); N.M. STAT. ANN. § 30-22-1 (same); La.REV.STAT. ANN. § 14:108 (making illegal the "intentional interference with, opposition or resistance to, or obstruction of" an officer and defining the phrase "obstruction of" as used "in addition to its common meaning, signification, and connotation"); TEXAS PENAL CODE ANN. § 38.04 (West 1994 Repl. & 1998 Supp.) (making it a misdemeanor to "intentionally flee" from a peace officer); ARK.CODE ANN. § 5-54-103 (Michie 1997) (making refusal to submit to police officer a lesser offense than resisting arrest); ME.REV.STAT. ANN. tit. 17-A § 751-A (West 1998) (criminalizing only refusal to submit to an arrest or detention which involves force or substantial risk of injury); UTAH CODE ANN. § 76-8-305 (1999) (making "interference" with an arresting officer a misdemeanor); ALA.CODE § 13A-10-41 (1999) (criminalizing conduct which "prevents" a police officer from effecting an arrest); VT. STAT. ANN. tit. 13 § 3017 (1999) (same); N.J. REV. ST. § 2C:29-2 (1999) (same); N.Y. PENAL LAW § 205.30 (McKinney 1999) (same); WASH. REV.CODE ANN. § 9A.76.040 (West 1999) (same); ARIZ.REV.STAT. ANN. § 13-2508 (1999) (criminalizing "preventing" arrest only if done by force or by means creating a substantial risk of injury); TENN.CODE ANN. § 39-16-602 (1999) (preventing "a stop, frisk, halt, arrest or search" illegal only if done by force); GA.CODE ANN. § 16-10-24 (1999) (criminalizing conduct which "hinders" a police officer); CAL.PENAL CODE § 148 (Deering 1999) (criminalizing conduct which "delays" a police officer); IDAHO CODE § 18-705 (1999) (same); NEV.REV.STAT. ANN. § 199.280 (Michie 1998) (same); N.C. GEN. STAT. § 14-223 (1999) (same).
[9] Initially, the trial court found that C.L.D. violated the statute by "opposing" and "impeding" the police officer; on remand, the trial court found that C.L.D. had "resisted, opposed, and impeded a police officer."