**Ava Nicole HOWARD, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 08–CM–317.

District of Columbia Court of Appeals.

Argued Feb. 18, 2009.
Decided March 5, 2009.

Kyle A. McGonigal for appellant.

Mervin A. Bourne, Jr., Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese III, Thomas J. Tourish, Jr., and John T. Battaglia, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER and THOMPSON, Associate Judges, and PRYOR, Senior Judge.

FISHER, Associate Judge:

Appellant asks us to reverse her conviction for assaulting, resisting, or interfering with a police officer ("APO"), in violation of D.C.Code § 22–405(b) (2001). Because we conclude that the trial court based its find-

ing of guilt on an erroneous interpretation of the statute, we reverse and remand for further proceedings.

## I.  Statement of Facts

Appellant, Ava Howard, was arrested on December 9, 2007, in the Minnesota Avenue Metro Station, by Metro Transit Police Officer Rashad Watson. Appellant had been arguing loudly with another woman, and had grabbed the woman by her shirt. Officer Watson approached and asked appellant to let the other woman go. Appellant refused, and Officer Watson had to forcibly separate the women. Officer Watson asked the women to "sit down in the bus bay." While Officer Watson spoke to the other woman, appellant continued to stand, with her hands in her pockets. Officer Watson asked her several times to sit down and to remove her hands from her pockets, but appellant refused to do so.

Officer Watson approached appellant to place her under arrest for disorderly conduct. While Officer Watson was attempting to handcuff her, appellant continued to curse and yell. She also "was swinging her arms and her elbows, like as for [ ] resisting." She struck the officer in the chest. Another officer came to assist Officer Watson with the arrest, and appellant "kept swinging her elbows, striking him, too." Eventually, the two officers were able to subdue the appellant.

Appellant testified in her own defense. She claimed that when the officer initially told her to take her hands out of her pockets, she "pulled [her] pockets out just to show him there was nothing in there," but then put her hands back into her pockets because it was cold. She stated that the officer was using excessive force against her, and had pushed her face into a window as he was arresting her, which is why she had flailed her arms. She denied striking the officer.

The trial court, sitting without a jury, convicted appellant based solely on the uncontested testimony that she refused to take her hands out of her pockets when the officer asked her to do so. The court found that the violation occurred "when [appellant] didn't respond to [the officer's] orders to get her hands out so that he could see that nothing could happen to him." The trial court did not make any factual findings as to whether appellant resisted Officer Watson's attempts to arrest her, or whether she struck either of the officers.

## II.  Legal Analysis

"The standard of review for challenges to the sufficiency of the evidence is well established. In reviewing such claims, the court views the evidence in the light most favorable to the government and a conviction will be overturned only where there has been no evidence produced from which guilt can reasonably be inferred." *Joiner–Die v. United States,* 899 A.2d 762, 764 (D.C.2006). "[I]n reviewing bench trials, this court will not reverse unless an appellant has established that the trial court's factual findings are 'plainly wrong,' or 'without evidence to support [them].'" *Mihas v. United States,* 618 A.2d 197, 200 (D.C.1992) (quoting D.C.Code § 17–305(a) (2001)).

Appellant was convicted under the statute criminalizing interference with a law enforcement officer while he is performing his official duties, which states:

Whoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with a law enforcement officer on account of, or while that law enforcement officer is engaged in the performance of his or her official duties shall be guilty of a misdemeanor and, upon conviction, shall

be imprisoned not more than 180 days or fined not more than $1,000, or both. D.C.Code § 22–405(b) (2008 Supp.). Appellant principally relies upon our decision in *In re C.L.D.*, 739 A.2d 353 (D.C.1999). There, a police officer stopped and questioned three young men, believing them to be truant from a nearby high school. *Id.* at 354. The officer ordered all three to remain on the scene and to produce identification. *Id.* C.L.D. refused to identify himself and, disregarding the officer's order to remain, began walking away from the officer while shouting profanities. *Id.* C.L.D. was arrested and charged with APO. We held that

> to constitute an offense under [the APO statute], a person's conduct must go beyond speech and mere passive resistance or avoidance, and cross the line into active confrontation, obstruction or other action directed against an officer's performance in the line of duty.

*Id.* at 357. We emphasized that "[t]he key is the active and oppositional nature of the conduct for the purpose of thwarting a police officer in his or her duties." *Id.* Whether a particular situation fits this standard is "an intensely factual analysis," and "a careful balance must be struck between a statutory purpose and constitutional concerns." *Id.* We held that C.L.D.'s actions of "mouth[ing] off" and walking away did not "actively interpos[e] some obstacle that precluded the officer from questioning him or attempting to arrest him." *Id.* at 358.

In this case the trial judge found appellant guilty based solely on the evidence that she failed to take her hands out of her pockets despite a lawful order to do so. "[T]he issue before us is not whether the police officer had reason to act as he did.... The question before us is whether [appellant's] conduct violated the statute." *In re C.L.D.*, 739 A.2d at 355.

Appellant does not challenge, and we do not question, the officer's right, under these circumstances, to issue such an order for his own safety.[1] But we fail to see how appellant's failure to comply with the order was more "active and oppositional" than C.L.D.'s conduct. Whereas C.L.D. contemptuously walked away, appellant obeyed the officer's order to stay on the other side of the bay and, upon his request for identification, she showed him her badge. Perhaps it could be said that appellant's failure to obey the officer's order to remove her hands from her pockets "interfered" with the officer's performance of his duties by heightening his concern for his own safety and thus making it more difficult to sort out and calm a noisy confrontation. Nevertheless, the government has not cited, and we have not found, a case from this or any other jurisdiction where comparable conduct was held to violate a similarly-worded statute.

Moreover, we previously have applied a more "active and oppositional" concept of interference. In *In re E.D.P.*, 573 A.2d 1307 (D.C.1990), a juvenile confined at the Oak Hill Youth Center had joined a fray in a dormitory and, while "swinging at W.F. [he] hit the three juvenile supervisors." *Id.* at 1308. Upholding an adjudication of

---

1. *See, e.g., In re D.A.D.*, 763 A.2d 1152, 1157 (D.C.2000) (officer justified in conducting a pat-down search by several factors, including suspect's "unwilling[ness] to comply with multiple police requests to remove his hands from his pockets" and fact that he "continued to reach for his left pocket after being told by the officer to put his hands on the wall");

*Reyes v. United States*, 758 A.2d 35, 39 (D.C. 2000) ("[W]e may consider appellant's placing his hands in his pockets and subsequently refusing to open his hand as generating a legitimate safety concern which justified Officer Torres' taking measures to protect his safety once a valid *Terry* stop had been initiated.").

delinquency on alternative theories,[2] we commented that "[t]he evidence is undisputed that appellant interfered with the three juvenile supervisors as they were attempting to control the fray, and thus violated the [APO] statute." *Id.* Rejecting an argument that the statute was unconstitutionally vague, we held that, "[a]s applied to appellant, the statute can be construed to prohibit individuals from physically opposing District juvenile supervisors." *Id.* at 1309. *Cf. Dolson v. United States,* 948 A.2d 1193 (D.C.2008) (defendant's actions of closing gate, locking it, and holding it shut to prevent officer from entering property constituted violation of statute).

 Here, appellant did not actively or physically oppose or interfere with the officers simply by failing to remove her hands from her pockets. In light of our previous holdings in *C.L.D., E.D.P.,* and *Dolson,* we conclude that this aspect of appellant's conduct did not "cross the line into active confrontation, obstruction or other action directed against an officer's performance in the line of duty." *C.L.D.,* 739 A.2d at 357. In contrast, the evidence that appellant resisted the officers' attempts to arrest her by swinging her arms and elbows and striking them, if credited by the finder of fact, would be amply sufficient to sustain a conviction under the APO statute. *See In re E.D.P.,* 573 A.2d at 1308 ("appellant was aware of the presence of the three juvenile supervisors and despite that knowledge he swung his arms and legs without caring who he hit"). But the testimony from the officer and the appellant was conflicting, and the trial court did not make any credibility determinations or factual findings to resolve those conflicts.

If this had been a jury trial ending with a general verdict, we would have been able to affirm based on the evidence that appellant swung at and hit the officers. *See White v. United States,* 714 A.2d 115, 118 n. 5 (D.C.1998) ("Since the jury returned a general verdict of guilty on the charge of CPWL, the conviction may be affirmed if the evidence was sufficient to support either theory"—actual possession or constructive possession.) (citing *Griffin v. United States,* 502 U.S. 46, 49–51, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991)). Here, however, we must remand so that the trial court may determine whether to convict based on a more comprehensive view of the evidence. *See Foster v. United States,* 699 A.2d 1113, 1116–17 n. 5 (D.C.1997) ("In a bench trial, ... the trial court will often reveal the precise basis for the decision. We think that if that particular basis is erroneous but other bases not addressed by the trial court would sustain a conviction, the proper course of action is to remand rather than reverse outright.").

The judgment of the Superior Court is vacated, and this case is remanded so that the same trial judge may consider the evidence further in light of this opinion.

*So ordered.*

---

**2.** We also discussed the theory of transferred intent. *In re E.D.P.,* 573 A.2d at 1308.