**Andre M. JONES, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 09–CM–212.

District of Columbia Court of Appeals.

Argued March 24, 2011.

Decided April 7, 2011.

Christine A. Monta, Public Defender Service, with whom James Klein, Floral Park, and Samia Fam were on the brief, for appellant.

Suzanne Clement Libby, Assistant United States Attorney, with whom Ronald C. Machen, Jr., United States Attorney, and Elizabeth Trosman and Chrisellen Kolb, Assistant United States Attorneys, were on the brief, for appellee.

Before REID and FISHER, Associate Judges, and FERREN, Senior Judge.

REID, Associate Judge:

Appellant, Andre M. Jones, appeals from his conviction for misdemeanor assault on a police officer ("APO") in violation of D.C.Code § 22–405(b).[1] He contends that his case should be remanded to the trial court because the court may have convicted him on the basis of an invalid legal theory pertaining to noncriminal conduct. In light of (1) conflicting accounts of the encounter between the police and Mr. Jones; (2) the absence of an explicit credibility determination by the trial court; (3) the government's three theories of Mr. Jones's guilt, two of which may not sustain

---

1. D.C.Code § 22–405(b) (2001) provides: Whoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with a law enforcement officer on account of, or while that law enforcement officer is engaged in the performance of his or her official duties shall be guilty of a misdemeanor and, upon conviction, shall be imprisoned not more than 180 days or fined not more than $1,000, or both.

his conviction; and (4) the absence of specific findings showing the basis for Mr. Jones's conviction, we are constrained to remand this case to the trial court for clarification of its verdict.

## FACTUAL SUMMARY

The transcript of Mr. Jones's February 6, 2009 bench trial reveals the following. On July 5, 2008, Mr. Jones was in his front yard, located in the 4300 block of 4th Street, in the Northwest quadrant of the District of Columbia, playing with his children. Shortly after 5:00 p.m. officers from the Metropolitan Police Department entered this block while pursuing a suspect for a narcotics arrest. Among the officers chasing the suspect was Officer Alfonso Matos. Officer Matos caught the suspect and while he was attempting to place him in handcuffs, Mr. Jones and another man, Vincent Moore, approached. Both men stood within approximately five feet of Officer Matos as he prepared to transport the suspect. Mr. Moore asked Officer Matos what he was doing, while Mr. Jones began screaming and yelling profanities at Officer Matos. Officer Matos advised both individuals to return to the sidewalk.

Mr. Moore complied with the instructions given by Officer Matos, but Mr. Jones did not. Mr. Jones remained in the street and yelled profanities at the officers. Officer Matos again asked Mr. Jones to return to the sidewalk. Mr. Jones eventually moved to the sidewalk but continued to yell, scream, and use profanities. Officer Matos warned Mr. Jones that if he continued to use profanities and scream, he would place him under arrest. Mr. Jones persisted in yelling and screaming at the officers, demanding to know what the suspect had done.

When Officer Matos sought to place Mr. Jones under arrest for failure to follow the orders given to him, Mr. Jones threw his hands up in front of the officer's face and cursed him. Officer Matos attempted to put Mr. Jones in handcuffs by grabbing his hand, but Mr. Jones "pulled [his hand] back and pushed [Officer Matos]." The officer "took a fighting stan[ce]." Four other officers came over to assist Officer Matos with the arrest.[2] After the officers secured Mr. Jones in handcuffs, he was placed in a police car and taken to the police station for interviewing and processing.

Mr. Jones disputed the officers' account of the events and gave his version of the events, as follows: He and Mr. Moore watched as the officers brutally beat the suspect they had chased. Mr. Moore asked the sergeant, who was on the scene, if the two men could speak with him about what they had witnessed. Officer Matos heard Mr. Moore's inquiry to the sergeant and said, "y'all don't need to talk to anybody." Officer Matos approached Mr. Jones and wanted to know whether he was a drug dealer, told him he smelled of weed, and began pointing his fingers in his face. Mr. Jones felt threatened and asked the officer to remove his fingers. Officer Matos asked him if he wanted to be arrested to which he replied that he had done nothing wrong. Officer Matos took one of his handcuffs and threw it around the wrist of Mr. Jones. Almost immediately following the handcuffing Mr. Jones was surrounded by many other officers. He denied both pushing Officer Matos and resisting arrest.

In his closing argument, the prosecutor stated that Mr. Jones could be found guilty of assault on a police officer by using any

---

2. Officer Matthew Krimmel testified that "Officer Matos tried to handcuff [Mr. Jones] and the defendant pushed him in the chest and that's when I tried to assist Officer Matos in the handcuffing."

one of three theories: (1) he shoved Officer Matos, (2) he remained in the street shouting profanities at Officer Matos after being warned that he should return to the sidewalk, and (3) he took a fighting stance towards Officer Matos. As the prosecutor informed the trial court, in part:

> [T]he evidence presented has shown that the defendant committed several of the actions that can qualify as an assault on a police officer when directed at someone like Officer Matos.... [F]irst is the shove.... [Second,] we've heard testimony that [Mr. Jones] impeded Officer Matos in his work, in connection with his work that was going on [w]hen he stepped into the street ... and spoke to Officer Matos saying ... that he had nothing better to do and that ... this was basically a bad arrest. [Third,] [t]he intimidation type of APO also[.] Officer Matos testified ... that Mr. Jones took a fighting stance towards him at one point. When comparing the versions of events and they're starkly different, ... I'd ask the [c]ourt to consider which[ ] makes more sense.

Defense counsel challenged the police officers' version of the events, emphasized the presence of four police officers who were taller (over six feet compared with Mr. Jones' 5′8″ height) and heavier (approximately 250 pounds for the officers), and the character of Mr. Jones who had no record of convictions and who had served in the Army for the last twenty-two years. Defense counsel also asserted, in part, that "it's the government's duty not to just ... ask the [c]ourt to find which story makes the most sense ... [but] to prove its case beyond a reasonable doubt." In his rebuttal, the prosecutor essentially sought to cast doubt on the validity of the defense account of the events, and in doing so, reiterated the government's theory that Mr. Jones shoved Officer Matos, as well as the theory that Mr. Jones stepped off the sidewalk and yelled after being told to stay on the sidewalk.

The trial court declined to render an immediate verdict; the judge said she "want[ed] to take a little bit of time to think about [the case] some more" and that she did not believe she could do that before the end of the court day. In rendering her verdict on February 19, 2009, the trial judge stated:

> We had continued this matter in order[ ] for me to render a verdict in the case and I've reviewed all of the evidence carefully. I've listened to actually some of the testimony again over the recording system and I find in this case that the Government has met their burden and proven their case beyond a reasonable doubt. So I find Mr. Jones guilty of the offense.

## ANALYSIS

 Mr. Jones challenges his conviction on the grounds that the second theory offered by the government was legally invalid, and as a result, a conviction may not be sustained on that theory. He further argues that the invalid theory coupled with the trial court's general verdict requires a remand to ensure that he was not convicted of conduct which is not a violation of the APO statute.

The government contends that Mr. Jones did not request specific findings by the trial court, and thus, he has waived those findings under Super. Ct.Crim. R. 23(c). Moreover, the government argues that "[i]n finding [Mr. Jones] guilty, the trial court implicitly credited the officers' testimony and discredited [Mr. Jones's] testimony." And, the government maintains that even if "the government's second theory of APO liability ... was factually insufficient to support [Mr. Jones's] APO

conviction," the evidence is sufficient as to the 'shove' theory.

■■ We have held that "whenever various alternative theories of liability are submitted to a jury, any one of which is later determined to be improper, the conviction cannot be sustained. This is because of the possibility that the verdict might have rested entirely upon the improper theory." *Barkley v. United States,* 455 A.2d 412, 414 (D.C.1983) (reversed on other grounds); *see also Chiarella v. United States,* 445 U.S. 222, 237 n. 21, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980). ("We may not uphold a criminal conviction if it is impossible to ascertain whether the defendant has been punished for noncriminal conduct.") In reviewing a sufficiency claim, we must "review the evidence in the light most favorable to the government, recognizing the province of the trier of fact to weigh the evidence, determine the credibility of witnesses and draw reasonable inferences from the testimony." *Scott v. United States,* 975 A.2d 831, 836 (D.C. 2009) (citations omitted). Where the factfinder is a trial judge, we will not reverse a conviction unless "an appellant has established that the trial court's factual findings are plainly wrong or without evidence to support them." *In re D.T.,* 977 A.2d 346, 356 (D.C.2009).

■■ To violate the APO statute a person's conduct must "cross the line into active confrontation, obstruction or other action directed against an officer's performance in the line of duty ... by actively interposing some obstacle that precluded the officer from questioning him or attempting to arrest him." *In re C.L.D.,* 739 A.2d 353, 357, 358 (D.C.1999). The statute was intended to "deescalate the potential for violence which exists whenever a police officer encounters an individual in the line of duty." *Id.* at 355. "The key to establishing any violation of the APO statute is

'the active and oppositional nature of the conduct for the purpose of thwarting a police officer in his or her duties.'" *Dolson v. United States,* 948 A.2d 1193, 1202 (D.C. 2008) (quoting *In re C.L.D., supra,* 739 A.2d at 357).

Here, the government advanced three theories of guilt during its closing argument. Of the three theories the third, that Mr. Jones took a fighting stance toward Officer Matos, could not support the APO charge, because the transcript of the trial clearly reveals that Officer Matos actually testified that he "took a fighting stance toward Mr. Jones" after Mr. Jones "pushed him." The transcript does not reveal that either Officer Matos or Officer Krimmel testified that Mr. Jones took a fighting stance toward Officer Matos.

In addition, Mr. Jones contends that the act of stepping off the sidewalk and approaching Officer Matos did not amount to active confrontation or obstruction and did not prevent Officer Matos from performing his duties. He argues that the most he could have done by yelling at Officer Matos was distract him, and that distraction does not amount to a violation of the APO statute.

Because the trial court rendered a general finding, which may be done in a case tried without a jury, it is impossible to determine whether the trial court's verdict is based on the theory of the (1) shove, (2) stepping off the sidewalk and yelling, or (3) the alleged fighting stance of Mr. Jones. Clearly the shove would constitute an assault under the APO statute. However, because there is no evidence that Mr. Jones assumed a fighting stance against Officer Matos, that theory would fail, as the evidence would be insufficient to support it. And, stepping off the sidewalk and yelling, without more, is a legally in-

valid theory on which to support an APO conviction. Furthermore, there were competing and conflicting accounts of what happened during the encounter between Mr. Jones and the police. While the government asserts that the trial judge "implicitly credited the officers' testimony and discredited [Mr. Jones's] testimony," we cannot accept this assertion as a basis for affirming the trial court's verdict, given the three theories of guilt that the prosecutor presented to the trial court.

Nor can we rely on the government's argument relating to specific factual findings under Super. Ct.Crim. R. 23(c). Rule 23(c) provides, in part: "In a case tried without a jury the [c]ourt shall make a general finding and shall in addition, on request made before the general finding, find the facts specially." Here, the government faults Mr. Jones for failing to request specific findings under Rule 23, and the government argues that the case should not be remanded to the trial court for clarification. However, the government also could have requested specific findings under Rule 23(c), but did not do so. Under these circumstances and because "factual findings by the trial court, even though not required, would have been helpful . . . to proper appellate review of a conviction resulting from a non-jury trial," *United States v. Brown*, 716 F.2d 457, 462 (7th Cir.1983), we do not view Rule 23(c) as a barrier to a remand for a determination on the existing record of the theory on which the trial court relied in finding Mr. Jones guilty of the APO charge. In that regard, on remand, "the language of Rule 23(c) [would] not preclude [the trial court's] *sua sponte* request [to government and defense counsel] for proposed findings of fact and conclusions of law." *United States v. Figueroa*, 337 F.Supp. 645, 652 (D.N.Y.1971).

■ Finally, the government insists that because the shove was sufficient to satisfy the APO statute, and because the trial court is presumed to know the law, *see In re C.T.*, 724 A.2d 590, 597 (D.C. 1999), there is no need to remand the case. We disagree. In *Howard v. United States*, 966 A.2d 854 (D.C.2009), we reiterated that "the key" to sustaining a conviction under the APO statute is "the active and oppositional nature of the conduct for the purpose of thwarting a police officer in his or her duties," and that whether conduct "fits this standard is 'an intensely factual analysis' . . . ." *Id.* at 856 (citation omitted). Although there was evidence to support a legally valid theory of an APO conviction in *Howard*, we remanded the case because "the trial judge found appellant guilty based solely on the evidence that she failed to take her hands out of her pockets despite a lawful order to do so." *Id.* We concluded that "appellant did not actively oppose or interfere with the officers simply by failing to remove her hands from her pockets." *Id.* at 857. We remanded the case because "the testimony from the officer and the appellant was conflicting, and the trial court did not make any credibility determinations or factual findings to resolve these conflicts." *Id.* The same circumstance exists in this case. The officers' testimony and that of Mr. Jones differed significantly, and the prosecutor and defense counsel vigorously argued, during closing, whose account was more believable. But, the trial court did not explicitly resolve this conflict in stating its rationale for its guilty verdict, and we cannot assume, as the government urges, that the judge implicitly credited the officers' testimony and discredited that of Mr. Jones. In sum, given the absence of an explicit credibility determination and specific factual findings, we are constrained to

remand this case to the trial court for clarification regarding the basis of its guilty verdict.

Accordingly, for the foregoing reasons, we remand this case to the trial court "for such further proceedings ... as [are] just [under] the circumstances" discussed above. D.C.Code § 17–306.

*So ordered.*