**In re J.S., Appellant.**

**No. 08–FS–708.**

District of Columbia Court of Appeals.

Argued March 24, 2011.

Decided May 5, 2011.

Corinne Beckwith, Public Defender Service, with whom James Klein and Jaclyn S. Frankfurt were on the brief, for appellant.

Todd S. Kim, Solicitor General, with whom Peter J. Nickles, Attorney General for the District of Columbia at the time, and Rosalyn Calbert Groce, Deputy Solicitor General, were on the brief, for appellee.

Before FISHER, Associate Judge, REID,* Associate Judge, Retired, and FERREN, Senior Judge.

FISHER, Associate Judge:

After a bench trial, the court found J.S. to be delinquent because he had committed the misdemeanor offenses of possessing a controlled substance, D.C.Code § 48–904.01(d); and assaulting, resisting, or interfering with a police officer ("APO"),

---

\* Judge Reid was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on April 7, 2011.

D.C.Code § 22–405(b). His sole argument on appeal is that there was insufficient evidence to sustain the adjudication for APO. We affirm.

## I. Background

On February 12, 2008, Officer Jeremy Bank was advised by another officer that the primary suspect in an armed robbery that occurred the night before, a youth nicknamed "L.B.," had been seen in the 2500 block of Elvans Road, S.E. Officer Bank recognized the nickname as belonging to a fourteen-year-old boy, later identified as J.S., whom he had previously seen hanging out with members of a gang called the Wellington Park Crew.

Officer Bank and his partner, Officer Felix Lina, drove to Elvans Road to look for J.S. so that they could obtain his real name and pass that information along to the officers investigating the armed robbery. At 5:20 p.m., Officer Bank spotted J.S. standing in front of 2534 Elvans Road, S.E., but when Officer Lina got out of the patrol car to approach him, J.S. "took off running." Both officers pursued and shouted at J.S. to stop. J.S. ignored their commands and ran into a wooded area where there was a shortcut that led to Pomeroy Road, S.E., but he slipped and fell face-down on the ground.

Within "three or four seconds" police caught up with J.S. and ordered him not to resist and to put his hands behind his back. Each officer grabbed one of appellant's arms to pull them behind his back using standard hand control techniques, Officer Bank on appellant's left side and Officer Lina on appellant's right side. Officer Bank testified that J.S. "was struggling to resist us holding his arms" and "[h]is body was moving back and forth...." J.S. "broke free" from his grip twice by "swinging his arm forward," making it difficult for the officers to handcuff

him. Officer Lina affirmed that J.S. was "trying to break free" and "was hiding his hands and moving away." But J.S. did not kick or swing at the police, and he was lying on his stomach as they handcuffed him.

Special Police Officer Eugene Dunmore, who regularly provided security for a nearby apartment complex, witnessed these events and concurred with the officers' testimony. Having learned that J.S. was a suspect in the armed robbery committed the night before, Officer Dunmore notified police of J.S.'s whereabouts earlier that day. Officer Dunmore saw that Officers Bank and Lina "had one handcuff on [J.S.]" and were "trying to put the other handcuff on him," but that J.S. was "still fighting them" and moving his arms "back and forth" while "rolling his body from side to side." After running to assist Officers Bank and Lina, Officer Dunmore took out a can of mace and threatened to spray J.S. in the face unless he stopped resisting arrest; only then did J.S. "stop[ ]" and "let them handcuff him."

After the struggle, which lasted between ten and fifteen seconds, police frisked J.S. for weapons. During the pat-down, a piece of paper and a small Ziploc bag fell out of one of J.S.'s pockets. The contents of the bag field-tested positive for crack cocaine. Appellant does not challenge the adjudication of delinquency for possessing that cocaine.

J.S. admitted that he ran away from police "[b]ecause I had crack in my pocket," but testified that when he slipped and fell he "just lay still and didn't move." He acknowledged that he pulled his arm away after police brought his arms behind his back to handcuff him, but claimed that he did so because his arm was hurting, and that when the police told him to stop resisting he replied, "I'm not resisting, you're hurting my arm." After appellant

pulled his arm away, Officer Lina deliberately put a knee onto his right wrist, and this action broke his wrist. J.S. explained that he stopped moving when Officer Dunmore threatened him "[b]ecause I didn't want to get sprayed with mace."

In closing argument, appellant's counsel summarized the defense theory of the case: "We're not saying the officers intended to hurt him. We're not saying they used excessive force. What we're saying is, is that J.[S.]'s actions were not voluntary, they were not on purpose, they were not an act of resistance, they were a reaction to the pain."

The trial court credited J.S.'s testimony that he felt pain as the officers tried to handcuff him and that police broke his right wrist when an officer later used a knee to hold down his right arm. But, it found that "[e]ven though J.[S.] felt pain, the officers were using reasonable force under the circumstances," and that "[a]lthough he was feeling pain, [J.S. was legally required] to do what he ended up doing ... go limp...." The parties agree that the APO offense was based on appellant's conduct before his wrist was broken, because appellant "was clear in testifying that he pulled his arm away in pain before the officer put his knee into J.S.'s wrist." Though the court believed that J.S. was "testifying completely truthfully to the best of his recollection," it concluded that "his very testimony fits right within the offense of assault on a police officer." The court explained:

> The argument that's offered by J.[S.] through counsel is that because he felt pain, he didn't act voluntarily. Because he felt pain, he didn't resist. He did resist. I think his argument is, I resisted because I was in so much pain. But the evidence established beyond a reasonable doubt that J.[S.] had the ability, if he was motivated enough, to cooper-

ate. When the special police officer came with his mace, then J.[S.] was motivated enough to cooperate.... That's why I'm finding guilt beyond a reasonable doubt, because the evidence establishes beyond a reasonable doubt that given sufficient motivation, he could cooperate and he did cooperate.

Two weeks later, before the trial court sentenced J.S. to six months of probation, it observed that "[t]he assault on the police officer, I believe, was very much a technical offense. It was not a situation that often comes before the Court when a young person is disrespectful to the police, defiant toward the police and assaultive in a physical sense toward the police." The court explained, "I want the disposition to reflect the fact that that APO, in my own mind, was a technical offense."

## II. Analysis

 "In a sufficiency challenge we view the evidence in the light most favorable to the government, draw all reasonable inferences in the government's favor, and defer to the factfinder's credibility determinations." *Dunn v. United States,* 976 A.2d 217, 221 (D.C.2009) (citation omitted). "[A]n adjudication of delinquency will not be reversed as long as there is evidence which reasonably permits a finding of guilt." *In re A.H.B.,* 491 A.2d 490, 496 (D.C.1985) (citation and internal quotation marks omitted).

 Generally, to prove APO the government must show "the elements of simple assault ... plus the additional element that the defendant knew or should have known the victim was a police officer." *Petway v. United States,* 420 A.2d 1211, 1213 (D.C.1980) (citation and internal quotation marks omitted); *see* D.C.Code § 22–

405(b) (2010 Supp.).[1] However, the APO statute proscribes conduct beyond assault, and extends to the actions of anyone who "assaults, resists, opposes, impedes, intimidates, or interferes with" a police officer. D.C.Code § 22–405(b). "These acts are stated in the disjunctive, and a finding that a defendant committed any one of them would support a finding of guilt under the statute." *Johnson v. United States,* 298 A.2d 516, 519 (D.C.1972). Nevertheless, despite its breadth, "the District's APO statute does not criminalize every refusal to submit to a police officer or every prevention or hindrance of an officer in his duties." *Coghill v. United States,* 982 A.2d 802, 807 (D.C.2009) (citations omitted).

Here, appellant's adjudication was based on "resist[ing]" rather than "assault[ing]" police officers. We have held that in order to constitute such a violation, "a person's conduct must go beyond speech and mere passive resistance or avoidance, and cross the line into active confrontation, obstruction or other action directed against an officer's performance in the line of duty" by "actively interposing some obstacle that precluded the officer from questioning him or attempting to arrest him." *In re C.L.D.,* 739 A.2d 353, 357–58 (D.C.1999) (footnotes omitted). "The key is the active

and oppositional nature of the conduct for the purpose of thwarting a police officer in his or her duties." *Id.* at 357 (footnote omitted).

Appellant argues that pulling his arm away in pain while being handcuffed was not the type of "active and oppositional" conduct that violates the APO statute. Appellant contends that his movements did not "actively interpos[e] some obstacle" to handcuffing him, but were more akin to "noncompliance" or "mere passive resistance or avoidance." *See Howard v. United States,* 966 A.2d 854, 856 (D.C.2009) (defendant's failure to comply with officer's order to remove hands from pockets does not fit " 'active and oppositional' concept of interference"); *C.L.D.,* 739 A.2d at 357–58 (ignoring officer's command not to leave, using profanity, and walking away did not "cross the line" into active resistance).[2]

Presented with circumstances very similar to these, we have said that resisting handcuffing constitutes the type of active resistance directed against police that is prohibited by the APO statute. In *Coghill,* defendant Shannon Marshall fled police but was found hiding in a grove of trees while lying on the ground with his arms concealed under his body. 982 A.2d

1. D.C.Code § 22–405(b) provides: "Whoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with a law enforcement officer on account of, or while that law enforcement officer is engaged in the performance of his or her official duties shall be guilty of a misdemeanor and, upon conviction, shall be imprisoned not more than 180 days or fined not more than $1,000, or both."

2. To further support this claim, appellant refers to the trial court's description of his crime during sentencing as "technical." Absent statutory authorization, we lack the power to vacate appellant's conviction on the ground that his offense was *de minimis. Dunn,* 976 A.2d at 223. To the extent that this argument calls into question the prosecu-

tor's decision to charge appellant with a merely "technical" offense, we reiterate that "[p]rosecutorial discretion is by its very nature exceedingly broad." *United States v. Wilson,* 342 A.2d 27, 30 (D.C.1975) (citation and internal quotation marks omitted). It may be that another prosecutor would have chosen not to charge appellant with APO in these circumstances, but it is not our role to review that choice. *See, e.g., District of Columbia v. Houston,* 842 A.2d 667, 673 (D.C.2004) ("A decision to prosecute or not to prosecute someone for a crime is a matter within the almost total discretion of the prosecutor and is, in all but the most unusual cases, not subject to second-guessing by the court.") (citations omitted).

at 805. The officer repeatedly ordered Marshall to show his hands, but Marshall refused and "resisted [the officer's] attempt to handcuff him, causing the officer to struggle to access [his] arms in order to secure the handcuffs." *Id.* We rejected the argument that Marshall's APO conviction could be based on his flight from police, but we stated that "the jury could have properly based [his] APO conviction on the evidence that [he] physically resisted the officer's attempt to handcuff him." *Id.* at 808. In addition, we concluded that the other defendant in that case, Darius Coghill, resisted police when he "braced his arms against the steering wheel [of his car] to prevent being removed from the vehicle by several officers." *Id.* at 806.

Here, police testified that J.S. was "struggling to resist us holding his arms" and did so by moving "back and forth," "rolling his body from side to side," and twice breaking free from one officer's grip by "swinging his arm forward." Though officers acknowledged that J.S. was lying on the ground and did not assault them by kicking or swinging at them, the evidence showed that he actively resisted their attempts to handcuff him. This was not an instance in which a person merely ignored an officer's command by refusing to take her hands out of her pockets (*Howard,* 966 A.2d at 856), or by walking (*C.L.D.,* 739 A.2d at 357–58) or even running (*Coghill,* 982 A.2d at 808) away from police. Instead, J.S.'s actions resembled the "active and oppositional" conduct we identified in *Coghill*—Marshall "physically resist[ing] the officer's attempt to pull his hands behind his back and handcuff him" and Coghill "resisting being removed" from his vehicle. 982 A.2d at 806, 808;[3] *see also Dolson v. United States,* 948 A.2d 1193, 1202 (D.C.2008) (closing gate, locking it, and holding it shut against a police officer attempting to enter constituted violation of APO statute).[4]

Appellant also asserts that he did not have "the requisite intent to resist the officers who handcuffed him." Although appellant initially did not appear to question that APO is a general intent crime,[5] at oral argument he clarified his position by stating that the government must prove

---

**3.** We noted that Coghill had engaged in "the type of escalating conduct that increases the likelihood of violence during police encounters and that the statute was designed to prevent." 982 A.2d at 806 (citation omitted). Here, the trial court found that J.S.'s wrist was broken only after he forced his arm free from an officer's grip for the second time, at which point that officer abandoned standard hand control techniques and used his knee to pin down J.S.'s arm.

**4.** We are neither bound by, nor persuaded by, the decision in *City of Pekin v. Ross,* 81 Ill. App.3d 127, 36 Ill.Dec. 412, 400 N.E.2d 992 (1980), which, on similar facts, reversed a "quasi-criminal" conviction for resisting a peace officer. Mr. Ross "admitted that when his hands were brought behind his back and pushed high on his back he attempted to pull them down because of the severe pain it caused." *Id.,* 36 Ill.Dec. 412, 400 N.E.2d at 994. The court held that "[t]his certainly does not constitute resistance." *Id.* Officers had testified that Mr. Ross engaged in other conduct to resist arrest, but the appellate court doubted the credibility of that testimony and concluded "that the trial court's decision was against the manifest weight of the evidence." *Id.,* 36 Ill.Dec. 412, 400 N.E.2d at 994. As noted above, our standard of review is more deferential.

**5.** *See In re E.D.P.,* 573 A.2d 1307, 1308 (D.C. 1990) (stating that general intent requirement for simple assault also applies to APO, such that a defendant need only have "intent to perform the acts which constitute an assault") (internal quotation marks omitted); *Pino v. United States,* 125 U.S.App.D.C. 225, 226–27 n. 1, 370 F.2d 247, 248–49 n. 1 (1966) (stating that APO is "a so-called 'general intent' crime," and that "in such case no particularized reference to intent is required" in the indictment).

that J.S. had the "specific intent" to resist police. Appellant bases his argument on language from our decision in *C.L.D.*, where we stated that, in determining whether particular conduct amounts to "resistance," "[t]he key is the active and oppositional nature of the conduct *for the purpose of thwarting a police officer* in his or her duties." *C.L.D.*, 739 A.2d at 357 (emphasis added). Appellant contends that this reference to "purpose" requires the government to show that J.S. acted with the specific intent—that is, the purpose—"of thwarting a police officer." [6] Because the trial court credited appellant's testimony that he pulled away from officers due to pain and not because he was trying to resist them, appellant asserts that the government failed to prove that he acted with specific intent to "thwart" police.

Appellant's argument focuses on language we used in *C.L.D.* to describe conduct which amounts to "resistance" and invites us to treat it as a holding that, at least in some circumstances, APO requires proof of a defendant's specific intent. However, "[t]he rule of stare decisis is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question." *Powell v. United States*, 684 A.2d 373, 388 (D.C.1996) (quoting *Murphy v. McCloud*, 650 A.2d 202, 205 (D.C.1994)). This court has never held, either in *C.L.D.* or elsewhere, that APO does, or even may, require proof of specific intent.

When this court in *C.L.D.* articulated a test for determining what conduct amounted to "resistance," it attempted to describe actions that an objective observer would decide were "active and oppositional" enough to constitute an offense. The phrase, "for the purpose of thwarting a police officer," was used only to indicate that such conduct must be *directed against* police officers, *see* D.C.Code § 22–405(b) ("resists ... a law enforcement officer"), thereby linking our definition of conduct sufficient to constitute "resistance" with the APO statute's principal rationale, which is to "deescalate the potential for violence which exists whenever a police officer encounters an individual in the line of duty." *C.L.D.*, 739 A.2d at 355.

Indeed, we recently reiterated that the reason the APO adjudication in *C.L.D.* merited reversal was "because the [defendant's] passive resistance and avoidance were not actively directed against the officer's performance in the line of duty." *Coghill*, 982 A.2d at 807. We elaborated that while defendant Darius Coghill's actions of bracing himself in his car were "active and directed at the officers," *id.* at 806, Shannon Marshall's flight was not "resistance" because "[i]t would be inherently inconsistent to find that Marshall's flight was directed *at* the officers since he ran *away* from them, and by removing himself from the situation, Marshall put distance between himself and the police and any immediate potential for violence." *Id.* at 807.

At oral argument, appellant suggested that even if the more traditional offense of "assaulting" a police officer requires only general intent, proof of specific intent should be required if the defendant is charged with one of the alternative means of violating the APO statute, such as "re-

---

**6.** *See Williams v. United States*, 858 A.2d 984, 995–96 & n. 16 (D.C.2004) (discussing concept of specific intent, and noting that standard instruction from 1978 Redbook stated that "[a] person who knowingly does what the law forbids, intending with purpose or bad intent to disobey the law, may be found to act with specific intent") (citation and internal quotation marks omitted).

sisting" a police officer. We rejected a comparable argument in *Smith v. United States*, 593 A.2d 205, 206 (D.C.1991), where we acknowledged that one can commit the offense of assault in two different ways. Nevertheless, we held that "the offense of assault, whether the 'attempted-battery' type or the 'intent-to-frighten' type, remains a general intent crime"; the type of intent required "for violation of the statute does not change merely because the perpetrator makes an effort to do physical injury on the one hand and an effort to frighten the victim on the other." *Id.* at 207. Similarly here, while there are multiple ways of committing the offense of APO, the intent requirement does not change simply because the perpetrator chooses to resist handcuffing instead of kicking or hitting the officer.

Finally, appellant argues that he lacked even general intent ("to perform the act which constitutes an assault") because his action in pulling away from the arresting officers was a "reflexive," involuntary response to pain. The trial court addressed this issue and explicitly rejected appellant's argument: "[H]e did act voluntarily and on purpose, and not by mistake or accident, because his behavior showed that when he was motivated enough notwithstanding the pain, [he] was able to stop." [7] It was not clearly erroneous for the trial court to reach this conclusion.

### III. Conclusion

For the reasons stated above, the judgment of the Superior Court is hereby

*Affirmed.*

---

7. The trial court may have been quoting from Criminal Jury Instructions for the District of Columbia, Nos. 3.100, 4.114 (5th ed. rev. 2010) (adopting language that defendant "acted 'voluntarily and on purpose, not by mistake or accident,'" to describe general intent and applying that language to APO).