# District of Columbia
# Court of Appeals

**No. 14-CM-247**

WILLIAM BRIAN FOSTER,



Appellant,

v.

**CMD-14687-13**

UNITED STATES,

Appellee.

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE:    WASHINGTON, *Chief Judge*; FISHER, *Associate Judge*; and
STEADMAN, *Senior Judge*.

## J U D G M E N T

This case was submitted to the court on the transcript of record, the briefs filed, and without presentation of oral argument.    On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the trial court's judgment is affirmed.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: April 21, 2016.

Opinion by Chief Judge Eric T. Washington.

Concurring opinion by Chief Judge Eric T. Washington.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CM-247

WILLIAM BRIAN FOSTER, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(CMD-14687-13)

(Hon. Yvonne Williams, Trial Judge)

(Submitted December 15, 2015                    Decided April 21, 2016)

*Anna B. Scanlon* was on the brief for appellant.

*Ronald C. Machen Jr.*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *John P. Mannarino*, and *J. Matt* Williams, Assistant United States Attorneys, were on the brief for appellee.

Before WASHINGTON, *Chief Judge*, FISHER, *Associate Judge*, and STEADMAN, *Senior Judge*.

Opinion for the court by *Chief Judge* WASHINGTON.

Concurring opinion by *Chief Judge* WASHINGTON at page 7.

WASHINGTON, *Chief Judge*:    William Brian Foster ("Appellant") was

charged with two counts of assault on a police officer ("APO").[1] The first count charged him with assaulting Officer Matthew Konkol and the second count charged him with assaulting Officer Robert Chester. Both officers were called to appellant's home to assist Mobile Crisis, a psychiatric team that responds to calls concerning individuals in need of psychiatric assistance. Appellant is an individual with schizophrenia. At the conclusion of the government's case, the trial court granted appellant's motion for judgment of acquittal on the APO count as to Officer Chester, but denied the motion as to Officer Konkol. Appellant was convicted of APO as to Officer Konkol and asserts on appeal that the evidence was insufficient to sustain his conviction. We disagree, and affirm.

## I. Factual Background

On August 18, 2013, Mary Foster, appellant's mother, called the Department of Health because she was concerned for her son. Mr. Foster has schizophrenia and had not been taking his medication. Mobile Crisis arrived at Ms. Foster's home, where appellant resides, with at least two police officers, Officer Chester and Officer Konkol. Once appellant realized Mobile Crisis was there for him, he

---

[1] D.C. Code § 22-405 (b) (2012 Repl.).

went inside the home and went downstairs to his room. The officers instructed that appellant had to go with them, to which appellant replied that he was not going.[2] The officers were not there to arrest appellant for any criminal activity. However, the officers then attempted to handcuff appellant and a scuffle ensued. Officer Konkol sprayed appellant with oleoresin capsicum ("O.C.") spray. Appellant then "shouldered" past Officer Konkol and ran out of the house. Once he was outside, appellant voluntarily went down to the ground on his knees and the officers attempted to handcuff him. Appellant testified that an officer stuck a knee into his back, hindering his ability to breathe. Appellant testified that he told the officers that he could not breathe, and that he began to kick his legs out to help him breathe, almost as a "reflex." Officer Michael Dowling, who arrived to the scene to assist Officers Konkol and Chester, testified that appellant was "[f]ace down on the ground with his legs flailing, with his arms underneath his body" while the officers attempted to handcuff him. Officer Konkol testified that at no time was appellant under arrest. Officer Chester testified that they were there only to assist Mobile Crisis and "keep the peace."

---

[2] The officers intended to take appellant to the Comprehensive Psychiatric Emergency Program after Mobile Crisis determined it wanted to evaluate him.

## II. Analysis

"We review challenges to the sufficiency of the evidence by viewing the 'evidence in the light most favorable to the government, giving full play to the right of the [fact finder] to determine credibility, weigh the evidence, and draw justifiable inferences of fact.'" *Coghill v. United States*, 982 A.2d 802, 805 (D.C. 2009) (quoting *Sousa v. United States*, 400 A.2d 1036, 1043 (D.C. 1979)). The trial court found appellant guilty of one count of APO against Officer Konkol for "pushing" or "shouldering" the officer as well as resisting arrest while he was being handcuffed by the officer. "Under District of Columbia law, '[w]hoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with a law enforcement officer on account of, or while that law enforcement officer is engaged in the performance of his or her official duties,' is guilty of APO." *Coghill*, 982 A.2d at 805 (citing D.C. Code § 22-405 (b) (2012 Repl.)). Generally, to prove APO, under circumstances where the appellant is not merely resisting, the government must show "the elements of simple assault . . . plus the additional element that the defendant knew or should have known the victim was a police officer." *Petway v. United States*, 420 A.2d 1211, 1213 (D.C. 1980) (citation and internal quotation marks omitted). In this case, however, appellant was also found guilty of APO for resisting efforts by the

police to handcuff him. We have held that in order to constitute such a violation, "a person's conduct must go beyond speech and mere passive resistance or avoidance, and cross the line into active confrontation, obstruction or other action directed against an officer's performance in the line of duty[]" by "actively interposing some obstacle that precluded the officer from questioning him or attempting to arrest him." *In re C.L.D.*, 739 A.2d 353, 357-58 (D.C. 1999) (footnotes omitted). "The key is the active and oppositional nature of the conduct for the purpose of thwarting a police officer in his or her duties." *Id.* at 357 (footnote omitted).

We are satisfied that the evidence is sufficient to sustain appellant's APO conviction. There is evidence in the record that the police officers were in full uniform while assisting the mobile crisis unit. Further, there was evidence in the record that the officers explained their presence to appellant and attempted to put handcuffs on him when he indicated that he would not go with them. At that point, the officers attempted to subdue him by spraying him with O.C. spray and appellant ran out of the house using his shoulder to move Officer Konkol out of the way. Because there is evidence in the record that appellant knew that the individuals in his house were police officers, that appellant was determined not to go with them, and that he used his shoulder to move past Officer Konkol as he ran

out of the door, we are satisfied that there is sufficient evidence in the record to sustain appellant's conviction for the APO that was committed in the house.[3]

After running outside, appellant collapsed on the ground, ostensibly because he could not see as a result of being sprayed with the O.C. spray in the house. An officer who came on the scene to help Officer Konkol testified that he saw Officer Konkol attempt to handcuff appellant but that appellant resisted him by flailing away with his legs while lying on his arms, actively trying to prevent the officers from getting to him. We have concluded that mere passive resistance does not constitute APO. *See In re C.L.D.*, 739 A.2d at 357-58. However, we acknowledged that conduct similar to the conduct by appellant in this case resembles the "active and oppositional" conduct necessary for APO. *See In re J.S.*, 19 A.3d 328 (D.C. 2011). Because appellant engaged in active and oppositional conduct for the purpose of thwarting a police officer in his duties, the evidence is sufficient to find appellant guilty of APO when he purposefully laid

---

[3] Appellant asserts that the government did not prove that he did not act by mistake or accident, as he was pepper-sprayed before bumping the officer and may not have been able to see Officer Konkol in his path. However, viewing the evidence in the light most favorable to the government as we must, the officer testified that it appeared the spray took effect at the time appellant dropped to his knees outside of the house. Thus, the trial court's finding that appellant intentionally "pushed" the officer as he tried to get out of the house is supported by the record.

down on his hands once he was outside and actively resisted efforts by the police to handcuff him so he could be transported to the emergency psychiatric facility. *See Wilson v. United States*, 102 A.3d 751 (D.C. 2014).

For the foregoing reasons, the trial court's judgment is

*Affirmed.*

WASHINGTON, *Chief Judge*, concurring:   While the evidence is sufficient to survive the challenge raised in this appeal, I write separately to express a concern I share with the trial judge in this case about the potential for saddling those who suffer from serious mental health issues with criminal records.[1]   Here, appellant was convicted of APO for actively resisting the efforts of the police to restrain him in order to transport him to a mental health facility.   It is not clear on this record, however, whether appellant's oppositional conduct was the result of his mental illnesses or whether it had a separate genesis.   And, while I certainly understand

---

[1] I also share the trial court's concern about the apparent lack of specialized training that the police officers assisting the mobile crisis unit received in this case. That lack of training is inconsistent with the requirements outlined in MPD General Order 308.04 that addresses interactions between police and persons with mental health issues. If this training deficit is not addressed, it is reasonably foreseeable that more incidents like this will unnecessarily occur in the future.

and appreciate the reasons why those who serve as mental health professionals on a Mobile Crisis team would want a police escort, I am troubled that the presence of the police during these mental health visits can result in an individual being charged with a criminal offense because we have criminalized active oppositional resistance to the authority of the police. Therefore, if for policy reasons police officers continue to accompany the Mobile Crisis team of mental health professionals on these runs, I hope that those individuals who have the discretion to decide whether to criminally prosecute individuals who fail to comply with lawful orders will think twice before inflicting what could be considered a greater harm, in the form of a criminal charge and conviction, on a very vulnerable population.