Darius COGHILL

and

Shannon Marshall, Appellants,

v.

UNITED STATES, Appellee.

Nos. 06–CF–961, 06–CF–990.

District of Columbia Court of Appeals.

Argued Nov. 13, 2008.
Decided Oct. 29, 2009.

Brigitte L. Adams, for appellant Darius Coghill.

Sicilia C. Englert, Greenbelt, MD, for appellant Shannon Marshall.

Leslie Ann Gerardo, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time the brief was filed, and Roy W. McLeese III, Assistant United States Attorney, and Florence Pan, Assistant United States Attorney at the time the brief was filed, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, GLICKMAN, Associate Judge, and FERREN, Senior Judge.

WASHINGTON, Chief Judge:

A jury found co-defendants Shannon Marshall and Darius Coghill each guilty of one count of assaulting, resisting, or interfering with a police officer's duties, D.C.Code § 22–405(a) (2005), commonly referred to as assaulting a police officer or APO, and also found Marshall guilty of one count of possession of marijuana, D.C.Code § 48–904.1(d). Coghill appeals his APO conviction on the grounds that the government failed to put forth sufficient evidence to support the conviction. Marshall appeals his APO conviction on the grounds that the jury was improperly instructed, the government failed to set forth sufficient evidence to support the conviction, and that the arresting officer lacked probable cause to arrest him for APO. Because we agree that the jury was improperly instructed as to Marshall's APO charge, we affirm in part and reverse in part.

## I.

The instant convictions arose from an incident between appellants and the D.C. Metropolitan Police. On the evening of August 1, 2005, three uniformed D.C. Metropolitan Police officers, Officers Greer, Glenn, and Heraud, were patrolling in Northeast Washington, D.C. in a marked car. The officers observed an automobile pass by with windows they believed to be tinted too darkly, and thus unlawfully.

The officers signaled for the driver of the vehicle to stop and the driver obeyed. There were four people in the stopped vehicle. Officer Greer used a tint meter and determined that the windows were unlawfully tinted. The driver, Darius Coghill, presented his license and registration, began to argue with the officers about the basis for the stop, and when asked, denied having any contraband in the car and refused to consent to a search of the vehicle. Officer Greer returned to the patrol car to issue the citation while the other two officers remained by the stopped vehicle. Meanwhile, two additional officers, Officers Geddies and Sulla, arrived at the scene in another patrol car. While Officer Greer wrote a citation for the unlawfully tinted windows, Officer Heraud asked Coghill additional questions. Because of Coghill's nervousness, unwillingness to answer the questions, and because Officer Heraud could not see into the car, he asked Coghill to exit the vehicle, and told the other passengers to remain in the vehicle. The government's evidence established that Coghill complied, and Officer Heraud began a pat-down for weapons, but before the officer completed the pat-down, Coghill sat back down in the vehicle, and refused to exit again when asked. After Coghill repeatedly ignored Officer Heraud's orders to get out of the vehicle, Officers Heraud, Sulla, and Geddies attempted to forcibly remove Coghill from the vehicle. Coghill resisted the officers' efforts by bracing his feet on the floorboard and gripping the steering wheel. Meanwhile, another passenger—it was not clear who— urged Coghill to drive away. Coghill then engaged the gear shift and the vehicle began to roll away. Although Coghill resisted, the officers were able to forcibly remove him from the car, stop the vehicle, and handcuff him.

After stopping the car from rolling away, Officer Greer attempted to remove the key from the ignition, and at the same time, Shannon Marshall, a passenger in the back seat, exited the vehicle and fled. Officer Greer pursued Marshall and found him hiding in a grove of trees, laying down with his arms under his body. Not knowing if Marshall was armed, the officer repeatedly ordered Marshall to show his hands, but Marshall did not obey. The government's evidence established that Marshall resisted Officer Greer's attempt to handcuff him, causing the officer to struggle to access Marshall's arms in order to secure the handcuffs. The officer was able to handcuff Marshall, but when he walked him back to the location where the vehicle had been stopped, the vehicle was no longer there. Apparently, after Coghill was removed from the car and Marshall fled, the remaining two passengers drove off with the car. Marshall and Coghill were taken to the police station, where the police found marijuana in Marshall's wallet.

## II.

Under District of Columbia law, "[w]hoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with a law enforcement officer on account of, or while that law enforcement officer is engaged in the performance of his or her official duties" is guilty of APO. D.C.Code § 22–405(b) (2005).[1] "It is neither justifiable nor excusable cause for a person to use force to resist an arrest when such an arrest is made by an individual he or she has reason to believe is a law enforcement

---

1. The 2007 amendments to § 22–405 reduced the maximum penalty for a violation of subsection (b) to imprisonment of not more than 180 days, a fine of not more than $1,000, or both.

officer, whether or not such arrest is lawful." *Id.* § 22–405(d). Further, "mere passive resistance or avoidance" does not violate the APO statute. *In re C.L.D.,* 739 A.2d 353, 357 (D.C.1999). Coghill and Marshall both argue that the government's evidence only establishes that they exerted passive resistance, and therefore the evidence is insufficient to support their APO convictions. We review challenges to the sufficiency of the evidence by viewing the "evidence in the light most favorable to the government, giving full play to the right of the [fact finder] to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *Sousa v. United States,* 400 A.2d 1036, 1043 (D.C.1979).

## A.

 To violate the APO statute a person's conduct must "cross the line into active confrontation, obstruction or other action directed against an officer's performance in the line of duty" by "actively interposing some obstacle that precluded the officer from questioning him or attempting to arrest him." *In re C.L.D., supra,* 739 A.2d at 357–58. Recognizing that the statute was intended to "deescalate the potential for violence which exists whenever a police officer encounters an individual in the line of duty," *id.* at 355, we held that "the key to establishing any violation of the APO statute is 'the active and oppositional nature of the conduct for the purpose of thwarting a police officer in his or her duties.'" *Dolson v. United States,* 948 A.2d 1193, 1202 (D.C.2008) (quoting *In re C.L.D., supra,* 739 A.2d at 357).

Coghill's APO conviction was based on the government's evidence that while he was stopped for driving a car with unlawfully tinted windows, he abruptly sat back in the driver's seat while Officer Heraud was attempting to conduct a pat-down,

shifted the parked vehicle into gear, and braced his arms against the steering wheel to prevent being removed from the vehicle by several officers. Coghill's actions were active and directed at the officers; the actions impeded and interfered with Officer Heraud's pat-down search, the officers' attempt to remove him from the car, and the officers' completion of the traffic stop. Particularly by bracing himself in the car and resisting being removed, Coghill imposed an active, physical obstacle to the officers' effectuation of their duties. In *Dolson,* putting a finer point on the distinction between passive and active resistance, we held that "reinforc[ing] an existing barrier" or "the creation of a new barrier" is active resistance that violates the APO statute. 948 A.2d at 1202. In *Dolson,* the defendant's act of holding a gate shut while an officer tried to enter was conduct sufficient to violate the APO statute because the defendant's conduct was active resistance of the police officer.

Coghill's active resistance of the pat-down and attempts to remove him from the vehicle are precisely the type of escalating conduct that increases the likelihood of violence during police encounters and that the statute was designed to prevent. *Id.* ("If resistance to an arrest or a search made under the color of law is allowed, violence is not only invited but can be expected."). Here, unlike the minor in *In re C.L.D.,* but similar to the defendant in *Dolson,* Coghill engaged in "active and oppositional conduct ... for the purpose of thwarting a police officer in his duties." *See In re C.L.D., supra,* 739 A.2d at 357. Accordingly, we are satisfied that the evidence sufficiently supports Coghill's APO conviction.

## B.

With regard to the sufficiency of the evidence underlying Marshall's APO con-

viction, we must first address Marshall's argument that, with regard to him, the trial court improperly instructed the jury on what evidence is properly considered for APO. During jury deliberations, the jury sent a note to the trial court that asked: "For count two against Marshall, can we consider his exiting the vehicle and running from the scene as the basis of his resistance? Or can we only consider his behavior while on the ground in the woods in not making his hands available to Officer Greer quickly enough." In response, the trial court instructed the jury that there was no limiting instruction as to how it should consider the evidence. Marshall's trial counsel objected to the trial court's clarification. On appeal, Marshall argues that flight is not evidence of active resistance sufficient to violate the APO statute, and we agree.

Marshall's flight and the defendant's conduct in *In re C.L.D.* are materially the same with regard to the APO statute; both refused to comply with an officer's order and then attempted to leave the scene. In *In re C.L.D.*, an officer approached three school-aged minors to determine whether they were truant. Upon learning that the minors were indeed supposed to be in school, the officer ordered them to stand by the patrol car and identify themselves. One minor refused to identify himself, cursed at the officer, and stated his intention to leave. The officer directed the minor to remain, but the minor began to walk away. The minor was convicted of APO, and we reversed because the minor's passive resistance and avoidance were not actively directed against the officer's performance in the line of duty. Likewise, here, where Marshall, a passenger, fled the stopped vehicle despite being ordered to remain inside, his flight cannot constitute a violation of the APO statute.

As we noted in *In re C.L.D.*, unlike similar statutes in other jurisdictions, the District's APO statute does not criminalize every refusal to submit to a police officer or every prevention or hindrance of an officer in his duties. 739 A.2d at 357 n. 8; *see also (Ava) Howard v. United States,* 966 A.2d 854, 854 (D.C.2009) (holding that a defendant's refusal to remove her hands from her pockets when ordered to do so by an officer did not violate the APO statute because it was not active or oppositional conduct). Moreover, as we recently emphasized in *Howard,* "[t]he issue before us is not whether the police officer had reason to act as he did.... The question before us is whether [appellant's] conduct violated the statute." *Id.* at 856 (quoting *In re C.L.D., supra,* 739 A.2d at 355) (modification in original); *see also* D.C.Code § 22–405(d).

Here, Marshall's flight was not active conduct directed against the officers. It would be inherently inconsistent to find that Marshall's flight was directed *at* the officers since he ran *away* from them, and by removing himself from the situation, Marshall put distance between himself and the police and any immediate potential for violence. Further, the speed at which Marshall left the scene, running versus walking, does not affect the APO analysis because running away is no more actively confrontational than walking away. Also, Marshall did not wield a gun as he ran, unlike the defendant in *Ransom v. United States,* 630 A.2d 170, 174 n. 4 (D.C. 1993), from which the fact finder could infer that the suspect not only avoided, but in the words of the statute, actively "intimidate[d]" the officers from pursuing him. Nonetheless, just as in *In re C.L.D.,* "no doubt [Marshall] frustrated the officer's purpose; but the manner in which he did so does not contravene the statute [because] he did not resist, oppose or impede

the officer from questioning him or attempting to arrest him. Rather, he chose not to comply." 739 A.2d at 357. Accordingly, Marshall's flight was improperly considered as a basis for his APO conviction.

■■■ The government argues alternatively that leaving aside Marshall's flight, the evidence of Marshall's conduct in the woods sufficiently supports his APO conviction. At trial, the government adduced evidence that when Officer Greer attempted to handcuff Marshall in the woods, Marshall refused to show his hands when so directed and then physically resisted the officer's attempt to pull his hands behind his back and handcuff him. The government is correct that the jury could have properly based Marshall's APO conviction on the evidence that Marshall physically resisted the officer's attempt to handcuff him. However, here, because the jury asked the trial court whether Marshall's flight could be considered *the* basis of his resistance, indicating the sole basis, and the trial court gave no limiting instruction, we cannot know whether the jury relied solely on evidence of Marshall's conduct in the woods or relied, at least in part, on the flight when it convicted him of APO. To ensure a jury's verdict is based on proper grounds, "whenever various alternative theories of liability are submitted to a jury, any one of which is later determined to be improper, the conviction cannot be sustained. This is because of the possibility that the verdict might have rested entirely upon the improper theory." *Barkley v. United States*, 455 A.2d 412, 414 (D.C. 1983) (reversed on other grounds); *see also Chiarella v. United States*, 445 U.S.

222, 237 n. 21, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980) ("We may not uphold a criminal conviction if it is impossible to ascertain whether the defendant has been punished for noncriminal conduct.").[2] Because, based on the record before us, we cannot determine whether the jury improperly relied on the evidence of Marshall's flight in convicting him for APO, the conviction cannot stand.

■ Marshall also argues that because Officer Greer lacked probable cause to arrest him for APO, the trial court erred in denying his motion to suppress the marijuana found during the search incident to his APO arrest. This argument is without merit. Following Marshall's flight, Officer Greer had the reasonable suspicion to conduct an investigatory stop. Although Marshall's flight was not a basis for an APO violation, the fact that Marshall fled from the traffic stop has relevance as to whether the officer had reasonable suspicion to pursue Marshall into the woods. When Marshall fled, it was late at night, the officers had been unable to see though the vehicle's unlawfully tinted windows, and Marshall's flight from the vehicle occurred almost immediately after Coghill's unsuccessful attempt to escape the traffic stop, an attempt that was prompted by urging from another passenger. Under those circumstances, Marshall's headlong flight was sufficient to give Officer Greer reasonable articulable suspicion to justify an investigative *Terry* stop. *See (Robert) Howard v. United States*, 929 A.2d 839, 845 (D.C. 2007) (finding that a defendant's flight from the police and the surrounding circumstances gave the police reasonable ar-

2. Thus, this is not a case merely where the evidence was insufficient to convict on one of two theories submitted to the jury, *see Griffin v. United States*, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), and where the rule of *Barkley* quoted above would not apply; rather, the failure to answer the jury's request for further instruction left open the possibility of conviction "based on an erroneous view of the law"—"a particular theory of conviction ... contrary to law." *Id.* at 59, 112 S.Ct. 466 (citation omitted).

ticulable suspicion under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). We are satisfied that Officer Greer had sufficient reasonable suspicion to pursue Marshall into the woods.

 Once Officer Greer located Marshall in the woods, the government's evidence established that he attempted to handcuff Marshall in order to escort him back to the scene of the traffic stop and perform an investigatory stop there. Because the officer was alone, could not tell if Marshall was armed, and Marshall refused to show his hands when repeatedly ordered to do so, it was reasonable for the officer to handcuff Marshall to perform the investigatory stop. *See Hicks v. United States,* 730 A.2d 657, 660 (D.C.1999) ("The scope of permissible police action in any investigative stop depends on whether the police conduct was reasonable under the circumstances." (internal citation omitted)). At the point that Marshall physically resisted Officer Greer's attempt to affix the handcuffs, Marshall's conduct gave the officer probable cause to arrest Marshall for APO and perform a search incident to arrest. Accordingly, the trial court properly denied Marshall's motion to suppress the marijuana.

In conclusion, we affirm Coghill's conviction for APO and Marshall's conviction for possession of marijuana, and reverse Marshall's conviction for APO.

*So ordered.*