Edward DICKENS, Appellant,

v.

UNITED STATES, Appellee.

No. 10–CM–467.

District of Columbia Court of Appeals.

Submitted April 21, 2011.

Decided May 5, 2011.

Justin A. Okezie, Bethesda, MD, appointed by the court, was on the brief for appellant.

Ronald C. Machen, Jr., United States Attorney, and Elizabeth Trosman, Nicholas W. Cannon, and Leslie Ann Gerardo,

Assistant United States Attorneys, were on the brief for appellee.

Before RUIZ, Associate Judge, and FERREN and STEADMAN, Senior Judges.

FERREN, Senior Judge:

Edward Dickens appeals his conviction for assault on a police officer (APO), arguing that he was convicted for intimidating an officer based on words alone, contrary to both the APO statute and the Constitution. We conclude that the words he used to incite an attack by his dog on the officer were not mere words that exempt him from prosecution under the statute or give him a defense under the First Amendment. We therefore affirm.

## · I.

Appellant was charged with one count of APO[1] and one count of animal cruelty. After a bench trial, he was convicted of assault and acquitted on the cruelty charge. Appellant's conviction was the consummation of events that took place on September 13, 2009, when several Metropolitan Police Department officers, including Gregory Brown, Norman Kenny, Nathan Foster, and Jeremiah Mendez, were patrolling the 2200 block of Mount View Place, S.E. Officer Brown saw a man, later identified as appellant, walking with a pit bull on a leash and noticed a bulge in appellant's right waistband. Suspecting a weapon, Brown pulled his squad car alongside appellant and asked him how he was doing. Appellant looked at the officers but did not respond and continued walking.

Brown left his car and asked appellant if he could talk to him, whereupon appellant "took off running." Brown got back into his car to follow appellant while Officers Kenny and Foster chased him on foot. Officer Mendez got out of his squad car and also began to chase appellant. The pit bull, now unleashed, ran a few feet behind appellant. Foster and Mendez caught up to appellant and tried to restrain him. As they were attempting to handcuff him, appellant yelled "get them" or "get him." As short as possibly one second later, the pit bull growled and "lung[ed] at Officer Mendez," who felt the pit bull bite him from behind. The officer pushed the dog off of him and, upon seeing the dog charging at him again, shot it twice.

The judge concluded that he could not find beyond a reasonable doubt that the dog had attacked Mendez as a direct result of appellant's command, rather than as a natural response by the dog to the officers "laying hands and bringing to the ground its owner." Thus, the judge could not find that the dog attack itself constituted an APO by appellant. The prosecutor then presented an alternative theory: that appellant had "intimidated" the officer, within the meaning of the statute, by his command to the dog. The judge eventually agreed, concluding that the evidence was sufficient to convict appellant under that intimidation theory. "[W]hat we have here," said the judge, "is actually an action that is embodied in words ... that seek to mobilize an instrumentality." The trial court found that appellant's "words were an effort to launch, using the instrumentality of his dog, an attack on the police."

1. D.C.Code § 22–405(b) (2009 Supp.) provides:

Whoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with a law enforcement officer on account of, or while that law enforcement officer is engaged in the performance of his or her official duties shall be guilty of a misdemeanor and, upon conviction, shall be imprisoned not more than 180 days or fined not more than $1,000, or both.

## II.

■ Appellant contends that the trial court erred in denying his motion for judgment of acquittal because his words, "get them" or "get him," without corresponding physical action, provided insufficient evidence to sustain a conviction for APO. He also maintains that the APO statute is unconstitutionally overbroad and void for vagueness, both on its face and as applied.

The relevant language in D.C.Code § 22–405(b) authorizes imprisonment for someone who "assaults, resists, opposes, impedes, intimidates, or interferes with a law enforcement officer." In *In re C.L.D.*,[2] we interpreted the statute to mean that "a person's conduct must go beyond speech and mere passive resistance or avoidance, and cross the line into active confrontation, obstruction or other action directed against an officer's performance in the line of duty."[3] Although we have recently interpreted other means of assaulting a police officer enumerated in § 22–405(b), such as "interfere with"[4] and "resist, oppose, and impede,"[5] we have not addressed the meaning of "intimidate"[6] or the evidence necessary to sustain a conviction under that theory.

Appellant cites cases in which we have said that mere words are not enough to sustain a conviction for APO,[7] and he asks us to apply that same, restrictive standard to a charge based on "intimidation" under the statute. The cases he relies on, however, involve a different kind of speech from the words, in context, used here. In *C.L.D.*, for example, the appellant refused to identify himself to a police officer, yelled obscenities at him, and told the officer that he was going to leave. When the officer instructed him to stay, the appellant shouted more obscenities. We concluded that although appellant, through his words, had "frustrated the officer's purpose," he did not "resist, oppose, or impede the officer by actively interposing some obstacle that precluded the officer from questioning him or attempting to arrest him."[8]

In contrast with *C.L.D.*, appellant's words—"get them" or "get him"—served a very specific purpose: to interpose the obstacle of his pit bull by using an attack command. This case is remarkably similar to one from the United States Court of Appeals for the Ninth Circuit. In *United States v. Hoff*,[9] an unarmed United States Forest Service officer cited the appellant for being in a restricted wilderness area

**2.** 739 A.2d 353, 357 (D.C.1999) (footnote omitted) (hereafter *C.L.D.*); *accord, Dolson v. United States*, 948 A.2d 1193, 1202 (D.C.2008) (evidence must show "active and oppositional nature of the conduct for the purpose of thwarting a police officer in his or her duties") (quoting *C.L.D.*, 739 A.2d at 357).

**3.** *C.L.D.* interprets the former statute for assault on a police officer, D.C.Code § 22–505(a) (1990), which contains the same actions prohibited by language almost identical to D.C.Code § 22–405(b).

**4.** *See Dolson, supra* note 2, 948 A.2d at 1200–02.

**5.** *See Coghill v. United States*, 982 A.2d 802, 807–08 (D.C.2009).

**6.** Under the obstruction of justice statute, D.C.Code § 22–722 (2001), we have held that telling a juror the way that he or she should vote, without physical force, is sufficient evidence to sustain a conviction under a theory of "intimidation." *See Smith v. United States*, 837 A.2d 87, 92–94 (D.C.2003).

**7.** *See C.L.D.*, 739 A.2d at 357–58; *In re E.D.P.*, 573 A.2d 1307, 1308–09 (D.C.1990); *cf. Williamson v. United States*, 445 A.2d 975, 978–79 (D.C.1982) ("mere words do not constitute an assault" under D.C.Code § 22–504 (1973) (simple assault)).

**8.** *C.L.D.*, 739 A.2d at 357–58.

**9.** 22 F.3d 222 (9th Cir.1994).

without a permit. The next day, the officer returned to the area and saw that appellant and his two companions from the day before were still at their illegal campsite. As the officer approached, appellant said, " 'go get 'em' three times to his companion's growling dog," which " 'seemed to be tied up' " and "made no move."[10] The officer testified that she had felt "intimidated," especially by "the scene with the dog," and that she had left the campsite without attempting to issue another citation to the appellant.[11]

The appellant in *Hoff* was convicted of "intimidating" a forest officer under a federal regulation[12] similar in relevant language to the APO statute before us here. He argued in the Ninth Circuit that he had used words protected by the First Amendment—more specifically, that verbal "intimidation" was entitled to constitutional leeway, in contrast with the "less privileged 'threats' " proscribed by regulation or "assaults" forbidden by statute.[13] The court of appeals would have none of that. The court reasoned, as the trial judge did here, that the appellant had used his words to launch "a dangerous instrumentality," meaning the dog.[14]

We agree with the Ninth Circuit. Appellant's language in this case was not merely an "obnoxious[ ]," "offensive[ ]," or "uncooperative" response to the officers—behavior that would have been constitutionally protected.[15] Rather, appellant used his speech to order his dog to attack a police officer. Although the trial court concluded that it could not find beyond a reasonable doubt that the dog attacked Mendez solely because of appellant's order, a physical attack is not required to convict for intimidation.[16] Intimidation, by definition, generates fear or employs various forms of coercion short of physical force or injury.[17]

It is important to add that, although in *Hoff* the officer testified that she had felt intimidated by "the scene with the dog,"[18] we need not find that appellant's words were specifically directed at Officer Mendez or that, having heard them, he was actually in fear from those words. Under our obstruction of justice statute, D.C.Code § 22–722, which also includes the word "intimidate" (and which we find applicable under the doctrine of *in pari materia*),[19] the government has to prove

10. *Id.* at 223.

11. *Id.*

12. *See id.* at 223. The *Hoff* court cited 36 C.F.R. § 261.3(a), which prohibited "[t]hreatening, resisting, intimidating or interfering with any forest officer engaged in or on account of the performance of his official duties in the protection, improvement, or administration of the National Forest System."

13. *Hoff, supra* note 9, 22 F.3d at 223.

14. *Id.* at 224.

15. *C.L.D., supra* note 2, 739 A.2d at 357.

16. *See Hoff, supra* note 9, 22 F.3d at 223 (tied-up dog lacked apparent ability to attack officer).

17. A modern dictionary definition of "intimidate" is: "(1) to make timid; fill with fear. (2) To coerce, inhibit, or discourage by or as if by threats." *American Heritage Dictionary* 439–40 (4th Ed. 1994). A legal definition of "intimidate" is "unlawful coercion; extortion." BLACK'S LAW DICTIONARY (9th ed. 2009). *Cf.* D.C.Code § 22–722(a)(1) (prohibiting a person from obstructing justice by using "intimidation *or* physical force") (emphasis added).

18. *Supra* note 9, 22 F.3d at 223.

19. *See Holt v. United States*, 565 A.2d 970, 975 (D.C.1989) ("Statutory provisions *in pari materia* relate to the same subject matter or have the same purpose or object," and a comparison of two statutes *in pari materia* will "aid in determining legislative intent when the language of a statute is ambiguous.").

only that the words *"could* have a tendency to influence or intimidate those who heard the statements," not that anyone was actually intimidated.[20] We believe that the same interpretation of "intimidate" applies to the APO statute, and that any police officer in Officer Mendez's situation would have reasonably been in fear of—and thus intimidated by—a pit bull attack from appellant's words of incitement.

## III.

▇ Appellant argues that even if his words violated the statute, D.C.Code § 22–405(b) is unconstitutional on its face, and as applied, because of "vagueness" and "overbreadth." According to the Supreme Court, "[t]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."[21] The rationale is that criminal responsibility should not attach if the accused had no reason to know that his or her behavior was proscribed.[22] Overbreadth is different. Even if a statute is "clear and precise," it "may nevertheless be overbroad if in its reach it prohibits constitutionally protected conduct."[23] The doctrine evolved to buttress First Amendment protection of speech and assembly in general by permitting a defendant, whose conduct is prohibited by a criminal statute, to challenge the facial validity of that statute if it would be unconstitutional when applied to the expressive conduct of a hypothetical defendant.[24] That said, "[o]nly a statute that is substantially overbroad may be invalidated on its face."[25]

Two decades ago, we rejected a challenge to the APO statute[26] on both vagueness and overbreadth grounds. *In re E.D.P.*[27] was essentially an assault case in which the juvenile defendant was adjudi-

---

**20.** *Castillo–Campos v. United States*, 987 A.2d 476, 492 (D.C.2010) (quoting *McBride v. United States*, 393 A.2d 123, 13[0] (D.C.1978)) (emphasis added); *accord Hoff, supra* note 9, 22 F.3d at 224 (applying regulation to "objectively reasonable perceptions" of the officer).

**21.** *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *accord Banks v. United States*, 955 A.2d 709, 712 (D.C.2008).

**22.** *Banks, supra* note 21, 955 A.2d at 712 (citing *Parker v. Levy*, 417 U.S. 733, 757, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974)).

**23.** *United States v. Smith*, 685 A.2d 380, 387 (D.C.1996) (citation and internal quotation omitted).

**24.** *See Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973): [T]he Court has altered its traditional rules of standing to permit—in the First Amendment area—"attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Dombrowski v. Pfister*, 380 U.S. [479,] 486 [85 S.Ct. 1116, 14 L.Ed.2d 22 (1965)]. Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.

**25.** *City of Houston v. Hill*, 482 U.S. 451, 458, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987); *see United States v. Williams*, 553 U.S. 285, 292, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008).

**26.** The statute at issue in *E.D.P., supra* note 7, like the statute in *C.L.D.*, see *supra* notes 2 and 3, reflected an earlier codification with a different section number, § 22–505(a), and contained language almost identical to that in § 22–405(b) at issue here.

**27.** *E.D.P., supra* note 7, 573 A.2d at 1308–09.

cated a delinquent under § 22–405(a), on a transferred intent theory, for "impeding and interfering" with three juvenile supervisors at Oak Hill Youth Center by hitting each of them while intending to assault another juvenile in his dormitory. Because *E.D.P.* concerned a physical assault, we concluded that the statute could be "narrowly construed to apply to physical conduct," thereby eliminating "free speech and assembly concerns." [28]  We therefore rejected the vagueness challenge because E.D.P.'s physical conduct was prohibited by the statute's plain language ("impeding" and "interfering"), and overbreadth was not a concern because "free speech"—not being physical conduct—was outside the express statutory prohibitions.

The dichotomy between free speech and physical conduct may have been appropriate to decide vagueness and overbreadth in *E.D.P.* But, in recognizing only two ways of distinguishing constitutionally protected from unprotected activity under the APO statute, *E.D.P.* announced a distinction at a level of generality too high to guide resolution of future occurrences. It did not come to grips with two more specific categories that had to be accounted for as new factual situations were presented: (1) speech not easily described as "free," such as criminal threats,[29] which could not automatically be read out of the statute; and, on the other extreme, (2) conduct that is arguably, but not assuredly, "physical," such as flight from a police officer's call to halt.[30]  This court ad-

dressed both categories in *C.L.D.*, characterizing them, respectively, as "verbal conduct" beyond "simply [speaking] out to a police officer," and "evasive action" not amounting to "physical assault." [31]  As a result, what remained as *E.D.P.*'s alternative catchall category beyond free speech—"physical conduct"—was defined more precisely to include unprotected speech in aid of action against a police officer, and to exclude merely passive, uncooperative conduct intended to frustrate an officer.  In sum, as noted earlier when quoting *C.L.D.*, in order to violate the APO statute, "a person's conduct must go beyond speech and mere passive resistance or avoidance and cross the line into active confrontation, obstruction, or other action directed against an officer's performance in the line of duty." [32]

When *C.L.D.'s* formulation of the APO statute is applied to a vagueness challenge, we are satisfied that the word at issue, "intimidate," is not unconstitutionally vague.  An ordinary person would understand [33] that the behavior charged against appellant—telling his pit bull to "get" the arresting police officers—is prohibited by a statute banning "intimidat[ion]" of the police in "the performance of [their] official duties." [34]  We also are satisfied that prosecution and conviction for intimidation in an APO case like this would not "encourage arbitrary and discriminatory enforcement." [35]

---

**28.**  *Id.* at 1309.

**29.**  In *C.L.D., supra* note 2, 739 A.2d at 357 n. 6, we noted: "There is, of course a distinction between protected speech and criminal threats, which could form the basis of an offense under § 22–505."

**30.**  *See Coghill, supra* note 5, 982 A.2d at 807–08.

**31.**  *C.L.D., supra* note 2, 739 A.2d at 356.

**32.**  *Id.* at 357.

**33.**  *See Kolender, supra* note 19, 461 U.S. at 357, 103 S.Ct. 1855.

**34.**  *Supra* note 1.

**35.**  *Kolender, supra* note 19, 461 U.S. at 357, 103 S.Ct. 1855.

■ Likewise, this statute is not overbroad, because its reach does not extend to constitutionally protected speech.[36] Appellant contends to the contrary, however, asserting that our APO statute is "very similar" to the one at issue in *City of Houston v. Hill*.[37] There, the Supreme Court reversed the conviction of a gay rights activist under a Houston ordinance for "wilfully or intentionally interrupt[ing] a city policeman ... *by verbal challenge during an investigation*."[38] The defendant had been shouting at a police officer in order to divert his attention from a demonstrator who had intentionally blocked traffic, but the Court held the statute overbroad because it dealt "not with core criminal conduct, but with speech."[39] Appellant misapplies the case. The District's APO statute does not, as in *Hill*, punish verbal criticism or challenges to police officers. As we observed in *C.L.D.*, our statute—including all its action words, such as "intimidates"—is directed exclusively at "active confrontation, obstruction, or other action directed against an officer's performance in the line of duty." There is no overbreadth.

■ Nor, as the statute was applied, have appellant's First Amendment rights been violated. The Supreme Court's First Amendment jurisprudence protects "a significant amount of verbal criticism and challenge directed at police officers."[40] But "a State may punish those words 'which by their very utterance inflict injury.'"[41] In *C.L.D.*, we emphasized that nothing in our opinion should be understood to "imply that a person's speech may not be used to establish the offense," but only that "speech, alone, may not permissibly constitute the offense."[42] As the Ninth Circuit graphically put it, ordering a dog to attack is "more akin to the cocking of a trigger than to privileged speech."[43] Appellant's words—"get them" or "get him"—urging his dog to attack the police officers attempting to handcuff him were, by their very nature, intended to injure one or more officers. Thus, they "failed to meet any conceivable definition of protected speech."[44]

*Affirmed.*

---

36. *C.L.D.*, *supra* note 2, 739 A.2d at 357; *E.D.P.*, *supra* note 7, 573 A.2d at 1309.

37. *Supra* note 23, 482 U.S. at 461, 107 S.Ct. 2502.

38. *Id.* at 454, 107 S.Ct. 2502 (emphasis added).

39. *Id.* at 460, 107 S.Ct. 2502.

40. *Id.* at 461, 107 S.Ct. 2502.

41. *Virginia v. Black*, 538 U.S. 343, 359, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (statutory prohibition of cross burning with intent to intimidate does not violate First Amendment)).

42. *C.L.D.*, *supra* note 2, 739 A.2d at 357 n. 7.

43. *Hoff*, *supra* note 9, 22 F.3d at 224; *cf. City of Chicago v. Lowy*, 40 Ill.App.3d 950, 353 N.E.2d 208, 211 (1976) (inciting a dog to attack another person on a city street is sufficient evidence of disorderly conduct).

44. *Hoff*, *supra* note 9, 22 F.3d at 223.