*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CF-814

JARRELL A. GAYDEN, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-15105-12)

(Hon. John McCabe, Trial Judge)

(Submitted October 10, 2014                    Decided October 29, 2014)[*]

*George E. Rickman* was on the brief for appellant.

*Ronald C. Machen Jr.*, United States Attorney, *Elizabeth Trosman*, *Chrisellen R. Kolb*, *Tejpal Chawla*, and *Stephen F. Rickard*, Assistant United States Attorneys, were on the brief for appellee.

Before GLICKMAN and BLACKBURNE-RIGSBY, *Associate Judges*, and REID,

---

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant of appellant's motion to publish. The official citation to *Gray v. United States* has been added, as well as a footnote which discusses *Lewis v. United States*, a case cited in *Gray*. Finally, a clause has been added at the end of the opinion to make it clear that on remand the trial court should enter judgment of acquittal as to the APO offense.

*Senior Judge*.

REID, *Senior Judge*:  After a bench trial, appellant, Jarrell A. Gayden, was convicted of assault on a police officer (APO), and attempted threats.[1]  For the reasons stated below, we affirm in part and reverse in part.

## FACTUAL SUMMARY

The government presented the testimony of MPD Officer Arthur Kimball who stated that he was conducting his regular patrol on August 28, 2012, in the 4400 block of Ponds Street in the Northeast quadrant of the District of Columbia, when he saw Mr. Gayden standing in the alley between Ponds and Quarles Streets. Due to several complaints about drug activity in that alley, he approached Mr. Gayden and told him that "he needed to move along" and "not to loiter in [that] area."  Mr. Gayden walked away and began cursing at the officer.  As Officer Kimball followed Mr. Gayden out of the alley, he called for additional police assistance because he was working without a partner; Mr. Gayden "was being loud

---

[1]  The applicable code provisions are:  D.C. Code § 22-405 (b) (2012 Repl.) (APO), and D.C. Code §§ 22-407, -1803 (attempted threats).  The trial court sentenced Mr. Gayden under the Youth Rehabilitation Act to concurrent terms of 180 days of incarceration on each offense, and an assessment of $100.00 for the Victims of Violent Crime Compensation Fund.

and boisterous," and several people were in the area "who were getting a little riled up." He also heard Mr. Gayden say, "Are you calling for back-up, I would if I were you before what happen[ed] to your partner happens to you[;] you can get hit."[2] Officer Kimball explained that based on his experience and knowledge of the community, "get hit" referred to someone getting murdered. In light of Mr. Gayden's statement, Officer Kimball believed that Mr. Gayden was threatening to take his life.

Upon the arrival of five additional officers, Mr. Gayden was arrested for the alleged threat made against Officer Kimball. Mr. Gayden did not resist when Officer Kimball and another officer placed him in handcuffs. At that point, Mr. Gayden's mother appeared in the alley "with at least 20 to 30 other individuals . . ., started screaming obscenities and yelling." According to Officer Kimball, Mr. Gayden "continually tried to pull away from [the officers] and was inciting the crowd, telling, screaming, get off me, get them off me, and other obscenities."

---

[2] On January 26, 2012, Officer Kimball and his former partner, Officer Robinson, attempted a stop of Mr. Gayden and his brother, Kelsey Pixley, in that same alley; they were standing near a dumpster known to be a "stash spot for narcotics." The attempted stop led to a foot chase of Mr. Pixley by Officer Robinson and ultimately resulted with Mr. Pixley on top of Officer Robinson pointing two guns to his head. When Mr. Pixley took flight, Officer Robinson shot him in the leg. Mr. Pixley entered a guilty plea to the offense, and was incarcerated at the time of Mr. Gayden's trial.

Officer Kimball put his hand on Mr. Gayden's bicep. Mr. Gayden "was continually trying to pull away from [the officers], struggling, shrugging his shoulders . . ., screaming, . . . just screaming at the crowd." Mr. Gayden said "[s]omething to the effect of, f**k the police, f**k you, Kimball, he's always f**k**g harassing me, I didn't do s**t." In response to the prosecutor's question about what the crowd was doing, Officer Kimball declared, "They were getting increasingly agitated. His mother was . . . screaming at us. There were several other younger females who were screaming at us, some males in the area who were yelling, again, just cursing at us, telling us we were doing too much, . . . we're f**k*d up, things like that." The officers placed Mr. Gayden on the ground. Shortly afterwards, a transportation vehicle arrived and Mr. Gayden was taken to the police station.[3]

The trial court credited Officer Kimball's testimony that when he was

---

[3] Mr. Gayden testified on his own behalf and also presented testimony from Ms. Dickey Nelson, his mother's friend and neighbor, and Yolanda Gayden, his mother. Ms. Nelson stated that after the police handcuffed Mr. Gayden, the police were "pushing him" and Mr. Gayden was "wiggling his body" or "twisting his body sort of at the hips" and "moving . . . [his] shoulders back and forth." Mr. Gayden testified that when Officer Kimball approached him he was sitting in the alley by his house and the basketball court. He walked away from the officer but Officer Kimball grabbed him. He denied making a statement about his brother and Officer Kimball's partner, or saying anything to the crowd. He claimed that Officer Kimball pushed him into another officer, pushed his shoulder, and he (Mr. Gayden) "turned back and hit the officer."

calling for backup, Mr. Gayden said to him, "are you calling for backup, I would if I were you, [before] what happened to your partner happens to you, you can get hit." The court determined that Officer Kimball's interpretation of Mr. Gayden's words about the incident between Mr. Gayden's brother and Officer Kimball's partner was reasonable. Consequently the trial court found Mr. Gayden guilty of attempted threats.

With respect to the APO charge, the trial court credited the testimony of Officer Kimball as to what Mr. Gayden was doing and saying and what the crowd was saying. The court declared that "there was a closer call on the assault of a police officer count because the testimony was kind of limited to pulling away with his arms while being held by Officer Kimball." The court recognized that "just speech is generally not considered an assault on a police officer." Nevertheless, the court declared, "certainly, the speech can be considered in determining whether all of the actions constitute resisting or intimidating an officer." Thus, the court concluded,

> even the little bit of sort of wiggling and pulling away somewhat from Officer Kimball, who had his … hand … on Mr. Gayden's bicep, and that sort of small amount of wiggling that was described by Officer Kimball and Ms. Nelson, combined with the cursing and loudly screaming at the crowd and the police officers, in the [c]ourt's view, does constitute assault on a police officer.

Therefore, the trial court found Mr. Gayden guilty of the APO charge.

## ANALYSIS

Mr. Gayden raises sufficiency of the evidence claims for both offenses. He argues that his APO conviction was based on mere speech and "conduct that was the result of justifiable cause." He claims that the trial court erroneously combined these two insufficient theories, which do not meet the standard of proof beyond a reasonable doubt. Mr. Gayden also argues that his attempted threats conviction was based on conditional language, and lacked any indication that he actually planned to harm Officer Kimball.

"In a sufficiency challenge we view the evidence in the light most favorable to the government, draw all reasonable inferences in the government's favor, and defer to the factfinder's credibility determinations." *Ruffin v. United States*, 76 A.3d 845, 849 (D.C. 2013) (quoting *In re J.S.*, 19 A.3d 328, 330 (D.C. 2011)). "Where the fact-finder is a trial judge, we will not reverse a conviction unless 'an appellant has established that the trial court's factual findings are plainly wrong

or without evidence to support them."' *Jones v. United States*, 16 A.3d 966, 970 (D.C. 2011) (quoting *In re D.T.*, 977 A.2d 346, 356 (D.C. 2009)).

### *APO Claim*

The government was required to prove that Mr. Gayden's conduct violated D.C. Code § 22-405 (b), which states, in part, that "[w]hoever without justifiable and excusable cause, . . . assaults, . . . resists, . . . impedes, . . . opposes, . . . intimidates a law enforcement officer . . . while [he] is engaged in the performance of his . . . official duties shall be guilty of " APO. *See Dickens v. United States*, 19 A.3d 321, 323 (D.C. 2011) ("The relevant language in D.C. Code § 22-405 (b) authorizes imprisonment for someone who 'assaults, resists, opposes, intimidates, or interferes with a law enforcement officer.'"). In this case, the trial court based its finding of an APO violation on the theory that Mr. Gayden both "resisted" and "intimidated" Officer Kimball.

"The District's APO statute does not criminalize every refusal to submit to a police officer or every prevention or hindrance of an officer in his duties." *Ruffin*, *supra*, 76 A.3d at 850 (quoting *In re J.S.*, 19 A.3d 328, 331 (D.C. 2011)). "To constitute 'resisting' a police officer, a person's conduct must go beyond speech

and mere passive resistance or avoidance, and cross the line into active confrontation, obstruction or other action directed against an officer's performance in the line of duty by actively interposing some obstacle that precluded the officer from questioning him or attempting to arrest him." *Id.* (citation and internal quotation marks omitted)). "Intimidation, by definition, generates fear or employs various forms of coercion short of physical force or injury." *Dickens*, *supra*, 19 A.3d at 324 (footnote omitted). To determine whether a defendant has intimidated an officer within the meaning of D.C. Code § 22-405 (b), we ask whether "any police officer in [the officer's] situation would have reasonably been in fear of – and thus intimidated by" – some obstacle that prevented the officer from performing his duties. *Id.* at 325.

In light of our case law we are constrained to reverse Mr. Gayden's APO conviction. We note at the outset that the trial court believed the APO finding was a close call because "there wasn't any testimony about a huge amount of physical movement by Mr. Gayden," and "the testimony was kind of limited to pulling away with his arms while being held by Officer Kimball." Nevertheless, the trial judge declared,

> even the little bit of sort of wiggling and pulling away
> somewhat from Officer Kimball, who had … his hand …
> on Mr. Gayden's bicep, and that sort of small amount of

wiggling that was described by Officer Kimball and Ms. Nelson, combined with the cursing and loudly screaming at the crowd and at the police officers, . . . does constitute assault on a police officer.

We conclude that "the little bit of sort of wiggling and pulling away" after Mr. Gayden had already been restrained in handcuffs without any resistance was insufficient to constitute "resisting" under the APO statute. Furthermore, under the circumstances of this case, the combination of the "little bit of . . . wiggling and pulling away" combined with the words spoken by Mr. Gayden and the onlookers, was insufficient, in our view, to establish intimidation.

This case is unlike *Dickens*, *supra*, where appellant yelled to his pit bull, "get them, get him," and the pit bull bit the officer. There we concluded that appellant's words were designed "to interpose the obstacle of his pit bull using an attack command." 19 A.3d at 323. We further said appellant was guilty of APO because he intimidated the officer, that is, "any police officer in [the officer's] situation would have reasonably been in fear of – and thus intimidated by – a pit bull attack from appellant's words of incitement." *Id*. at 325. But here, at the time Mr. Gayden's mother and 20 to 30 other individuals appeared on the scene, five additional officers had arrived to assist Officer Kimball and Mr. Gayden had been placed in handcuffs, without a struggle. The government's theory, accepted by the

trial court, was that Mr. Gayden used the crowd as an obstacle and to aid Mr. Gayden's attempt to resist and to get away from the custody of the officers. Although Mr. Gayden yelled to the crowd, "get off me, get them off me," and cursed the police, and Officer Kimball testified that Mr. Gayden's mother, several younger females, and some males were yelling and cursing, the officer did not indicate that the crowd had moved in any way in the direction of the officers, and we cannot say that, under the totality of the circumstances, the crowd was incited by Mr. Gayden to try to aid him in becoming free from custody; nor can we say that any police officer in Officer Kimball's situation (especially with the presence of five additional officers and with no indication of crowd movement toward the officers) would have reasonably been in fear of the persons who had gathered, or would have been intimidated by the possibility of a crowd attack due to Mr. Gayden's words.

In short, on this record we are unable to say that Mr. Gayden's conduct went "beyond speech and mere passive resistance or avoidance and cross[ed] the line into active confrontation" or "active[] interposing [of] some obstacle" that precluded Officer Kimball from, or "thwart[ed]" him in performing his duties; nor can we conclude under the circumstances of this case, that the government's proof established Mr. Gayden's resistance or intimidation of Officer Kimball in the

performance of his official duties. *Ruffin*, *supra*, 76 A.3d at 850; *Dickens*, *supra*, 19 A.3d at 324-25; *see also Coghill v. United States*, 982 A.2d 802, 806 (D.C. 2009) (citing *In re C.L.D.*, 739 A.2d 353, 357-58 (D.C. 1999)). Consequently, we reverse Mr. Gayden's APO conviction.

### *Attempted Threats*

We are satisfied that the government's proof was sufficient to prove Mr. Gayden guilty under the attempted threats statutes. He contends that the statement, "are you calling for back-up, I would if I were you before what happens to your partner happens to you, you can get hit" only expressed a possible or conditional outcome.

Under the threats to do bodily harm statute, the government must prove the following elements beyond a reasonable doubt: "that the defendant uttered the words to another person; that the words were of such a nature as to convey fear of serious bodily harm or injury to the ordinary hearer; that the defendant intended to utter the words which constitute the threat." *Carrell v. United States*, 80 A.3d 163, 167 (D.C. 2013) (citing *Campbell v. United States*, 450 A.2d 428, 431 n.5 (D.C. 1982)). Here, Mr. Gayden's words were explicit, (a) invoking a prior incident in

which his brother held Officer Kimball's partner on the ground while his brother pointed two guns toward the partner's head, and (b) telling Officer Kimball that what happened to his partner in that incident could happen to him – meaning that he "could get hit," that is, murdered; and there was no evidence that he was joking when he uttered the words. Applying the legal principle governing threats to do bodily harm, there is no doubt that Mr. Gayden uttered the words attributed to him and the trial court credited Officer Kimball's testimony. Nor is there any doubt on this record that Mr. Gayden's words were of such a nature as to convey fear of bodily harm to the ordinary hearer, and that Mr. Gayden intended to utter the words that constituted the threat to Officer Kimball. Hence, we agree with the trial court's finding that Mr. Gayden was guilty of a violation of the attempted threats statutes, based on Officer Kimball's credited testimony and the context in which Mr. Gayden's statement was made, including the prior interaction between Mr. Gayden, Officer Kimball, and Officer Robinson. *See Jenkins v. United States*, 902 A.2d 79, 86-87 (D.C. 2006) (the words "open the door" and "come out" were sufficient to sustain attempted threats conviction in the context of a prior threat to shoot); *see also Carrell*, *supra*, 80 A.3d at 164, 166, 171 (appellant properly convicted of attempted threats when he placed both hands around the victim's throat and yelled, "I could kill you right now, I could f**k**g kill you."); *Gray v. United States*, 100 A.3d 129, 136-137 (D.C. 2014) ("There was no evidence that

appellant was joking" when he said "'I'm going to kill you,' and made 'a gun motion' with his fingers.").[4]

Accordingly, for the foregoing reasons, we affirm Mr. Gayden's conviction on the attempted threats offense. However, we reverse his conviction on the APO charge and remand the case, with instructions to enter judgment of acquittal as to the APO charge and to resentence appellant, as necessary.

*So ordered.*

---

[4] In *Lewis v. United States*, 95 A.3d 1289 (D.C. 2014), we reversed a misdemeanor attempted threats to do bodily harm conviction. There, after appellant had been arrested and placed in handcuffs, he told a police officer that he "was lucky that [appellant] didn't get him when [appellant] had his gun on him, because he would have blown [his] g**d***ned head off." This court declared that the context of appellant's statement – made after arrest and handcuffing – revealed that appellant "no longer posed a physical threat" to the police officers. *Id*. at 1291. Here, however, Mr. Gayden made his statement to the police officer prior to arrest and handcuffing, and his words were much more specific and threatening in context since Mr. Gayden referenced his brother who, on a prior occasion, had held Officer Kimball's partner on the ground while pointing two guns toward the partner's head.